**Dale J. MacGREGOR,
Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary, Health and
Human Services, Defendant-Appellee.**

No. 85–3690.

United States Court of Appeals,
Eleventh Circuit.

April 14, 1986.

James F. McKenzie, McKenzie & Assoc., Pensacola, Fla., for plaintiff-appellant.

Michael Finney, Asst. U.S. Atty., Pensacola, Fla., Christine Bradfield, Dept. of H.H.S., Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, VANCE, Circuit Judge, and THOMAS\*, Senior District Judge.

VANCE, Circuit Judge:

This case is an appeal of the denial by the Social Security appeals council of disability benefits to an arthritic claimant, Dale MacGregor. The case has traveled a complex path through two administrative law judges, three visits to the appeals council, and two district court proceedings before arriving here. MacGregor first applied for benefits in January 1981 alleging onset in December 1980 of disability due to rheumatoid arthritis and depression. After he was turned down he made an unsuccessful appearance before an administrative law judge (ALJ) and the appeals council. He then filed suit in the district court which found no substantial evidence to support the refusal of disability. The court ordered a remand because of improper treatment of MacGregor's depression claim and the lack of a vocational expert's testimony on the transferability of his job skills. The appeals council then vacated the previous decision and remanded the case to an administrative law judge to hear testimony from a psychologist and a psychiatrist on MacGregor's depression. He was also to hear from a vocational expert on the transferability of job skills and the availability of employment in the national economy for a person in MacGregor's situation. The ALJ was then to issue a recommended decision. In that decision the ALJ found MacGregor disabled back to December 1980 and recommended award of benefits. The appeals council incorporated by reference the ALJ's statement of the pertinent provisions of the Social Security Act, the issues in the case and the evidentiary facts but denied total disability. The appeals council found him severely impaired and unable to return to his previous work but found him physically able to take on sedentary jobs which exist in significant numbers in the national economy.

MacGregor then filed suit in the district court, which referred the case to a magistrate. The district court accepted the magistrate's recommendation and affirmed the appeals council. This appeal followed.

I.

When he first applied for benefits in January 1981, Dale MacGregor was forty-seven years old with a master's degree in counselling. His previous work ran the gamut from marine collector to plumber to sailor-counsellor for troubled teenagers, all of which required moderate to heavy physical exertion. The counselling work also required intense mental concentration. MacGregor retired from the sailor-counsellor job, the last he has held, on the advice of his physician because his arthritis and depression made him unable to cope with either the physical or mental demands of the work. He testified in 1984 that his daily activities include dressing himself, watching TV, and talking to his children. He is occasionally able to drive short distances. He can neither stand nor sit for more than thirty minutes. He is unable to walk any distance. He is left-handed and finds the grip in his left hand has deteriorated. He has basically given up all physical activities because of his constant pain. He has on occasion had to be carried from his bed to the shower by his wife and children so that the hot water could loosen him up enough to be able to move. He testified to an inability to get through the day without one or more naps. His depression has made him unable to watch the news or read a newspaper without getting upset. Similar reactions to the problems of his patients were part of his decision to leave his counselling job.

The medical evidence relevant to his testimony begins in 1980 with findings by both a treating family practitioner and the Veterans' Administration of a history of rheumatoid arthritis. The VA granted him ten percent disability because of arthritis

---

\* Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

occurring in a Korean War wound. In January 1981 a rheumatologist, Dr. V. Lorraine Flatt, reported following MacGregor since 1979 due to joint pain and swelling and degenerative arthritis of the left shoulder. She saw him to be an early rheumatoid who, as evidenced by his long-term back problems, might also have spondylitis. Another rheumatologist, Dr. Diana Harris, reported polyarthralgia with a probable component of fibromalgia. She found that he had morning stiffness and difficulty in buttoning and writing. Dr. Leo Flynn, the only orthopedist to treat MacGregor, testified in 1981 that during a hospitalization he had found significantly restricted motion in MacGregor's neck and spine, radicular pain in the left upper extremity and one leg, one-third of normal spine motion, atrophy of the shoulder muscle, weakness in the shoulder blade and leg, muscle spasms, and reflex changes. Dr. Flynn had tomograms taken, which showed significant degenerative muscle and disc changes and worsening of arthritis. He testified that MacGregor would have frequent flareups requiring several days bed rest, severely interfering with the regular attendance required to hold down even a sedentary job. Dr. Mooneyham, a treating chiropractor, found degenerative disc disease and arthrosis as well as problems of pain, numbness, atrophy, swelling and lack of dexterity. He testified to finding a nucleus pulposis in the spine. He joined Dr. Flynn in testifying that MacGregor would be unable to hold down any full-time work. At the 1984 hearing before the second ALJ Dr. Flynn testified once again that MacGregor was in considerable pain from arthritis. He testified that both he and a consulting neurosurgeon, Dr. Kimbell, found that MacGregor had a ruptured disc in the neck and in the lower back. He further testified that MacGregor still had nerve root damage involving the C–5 and C–6 vertebrae in the neck and the fourth and fifth nerve in the back. A 1983 thermogram showed significant muscle spasm, trigger point and nerve root involvement. Flynn further testified to MacGregor's problems with depression and anxiety and stated that his medication would be expected to cause sleepiness and to interfere with his ability to think and concentrate. He explained that the medication could affect MacGregor's ability to make decisions and to react in certain situations. The ALJ took testimony from a consulting psychologist, Dr. Frank Brown, who interviewed MacGregor and gave him a battery of tests, including the Minnesota Multiphasic Personality Inventory. Based on his interview and the testing, Dr. Brown found plaintiff severely depressed and stated that his depression and low energy levels made appropriate interaction with supervisors difficult and any employment difficult to hold down. The ALJ also heard from a psychiatrist, Dr. K.D. Ragan, who found no psychiatric anomalies in MacGregor which would interfere with his reasoning or ability to follow orders. Finally, the ALJ heard from a vocational expert who stated that there existed jobs in the sedentary category that a person with MacGregor's exertional limitations alone could hold down. When the hypothetical was altered to include the likelihood of frequent arthritic flareups requiring several days' bed rest, however, the vocational expert stated that there would be no jobs available in the economy. He stated that the same lack of jobs would hold true if the claimant suffered side-effects from arthritis medicine sufficient to cause sleepiness or to compromise alertness or concentration levels, or where depression was significant enough to affect concentration levels or to interfere with appropriate relationships with supervisors and co-workers.

## II.

■ The appeals council here decided claimant was disabled to the extent that he could no longer perform his previous work. Once that decision has been made the burden shifts from the claimant to the secretary to demonstrate that there are jobs in the national economy that claimant could perform with his degree of disability. *Gibson v. Heckler,* 762 F.2d 1516, 1518 (11th Cir.1985). The Secretary found that MacGregor had the ability to perform a full

range of sedentary work.[1] Our examination of the record shows no substantial evidence to support that finding.

Our review of the Secretary's decision[2] is limited. Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). Within this narrowly circumscribed role, however, we do not act as automatons. We must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence. *Id.* Substantial evidence is more than a scintilla. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). This standard of review applies only to findings of fact. "[N]o similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir. 1982) (quoting *Smith v. Schweiker,* 646 F.2d 1075, 1076 (5th Cir.1981)).

■ There are specific rules that we follow in deciding whether evidence is substantial. The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary. The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. *Broughton v. Heckler,* 776 F.2d 960, 961–62 (11th Cir.1985); *Wiggins,* 679 F.2d at 1389–90. In this case both the treating orthopedist and the treating chiropractor found MacGregor disabled and unable to hold down any regular job because of the exertional defect of his arthritis and degenerative disc disease. The Secretary made no finding as to the weight of this testimony nor did he discredit it.[3] Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

The appeals council rejected consulting psychologist Brown's testimony as internally inconsistent and at odds with other evidence on the record. After carefully examining the record we conclude that there is no substantial evidence to support that rejection. Dr. Brown interviewed MacGregor and conducted significant testing, including the Minnesota Multiphasic Personality Inventory. From his interview and from the testing he concluded that MacGregor's depression was such that he could not operate under pressure nor relate appropriately to supervisors or co-workers. The appeals council noted that Dr. Brown had found MacGregor intelligent enough to understand and follow orders and to solve problems. The appeals council finds this inconsistent with Brown's diagnosis of depression. We see no inconsistency whatever and are almost embarrassed to remind the appeals council that highly intelligent and

---

1. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

2. We assume here that it is the appeals council, not the ALJ, to which we owe deference. *See Beavers v. Secretary of Health, Education & Welfare,* 577 F.2d 383, 386 (6th Cir.1978); *see also Hand v. Heckler,* 761 F.2d 1545, *vacated and rehearing en banc granted sub nom. Parker v.*

*Heckler,* 774 F.2d 428 (11th Cir.1985). Of course, our decision would be the same if deference were granted the ALJ since the ALJ recommended an award of benefits.

3. In brief, the Secretary argues that Flynn's and Mooneyham's testimony was unsupported by clinical evidence and thus discredited. The Secretary made no such finding in his order. We also note that many of Flynn's observations were based on hospital tests in the record. It also remains true that laboratory results are not necessarily required in cases such as this. *Walden v. Schweiker,* 672 F.2d 835, 839 (11th Cir. 1982); *see also Wilson v. Heckler,* 734 F.2d 513, 518 (11th Cir.1984).

able people do fall prey to crippling depression. The appeals council also found inconsistency with the testimony of Dr. Ragan, the psychiatrist, who conducted an interview with MacGregor. The only possible inconsistency we see is Dr. Ragan's "appears unimpaired" response to a question concerning problems with MacGregor's ability to sustain interpersonal relationships. Since his simple statement is neither explained nor supported by any testing, we conclude that it is not substantial evidence to refute Dr. Brown's finding of depression. We note also that Dr. Flynn's testimony pointed to the role MacGregor's depression played in worsening the effects of his physical problems. Dr. Ragan's testimony in the main dealt with different sorts of questions than did Dr. Brown's, and we see nothing in those questions to contradict the depression which Dr. Brown found in his own interview and which showed up significantly in the testing that followed. We note that the Secretary by his regulations prefers testimony supported by testing or clinical findings to unsupported testimony. *See, e.g.,* 20 C.F.R. §§ 404.1513, 404.1527–.1529.

■ Further difficulties with the appeals council's decision arise in its failure adequately to refute the finding of Dr. Flynn that the arthritis medication MacGregor was taking would significantly interfere with his ability to keep and hold any job by affecting his energy level, his judgment and his ability to remain awake and alert on the job. The only evidence supporting the appeals council's unwillingness to credit this testimony was Dr. Ragan's statement that MacGregor was taking no psychotropic medication except Valium. That statement in no way deals with the effects of MacGregor's arthritis medication. Yet another problem that leaves the appeals council decision unsupported by substantial evidence is its failure properly to address MacGregor's testimony on the pain he was experiencing. Subjective pain testimony which is supported by clinical evidence of a condition that can reasonably be expected to produce the symptoms of which claimant complains is itself sufficient to sustain a

finding of disability. 42 U.S.C. § 423(d)(5); *Landry v. Heckler,* 782 F.2d 1551, 1552 (11th Cir.1986); *see also Green v. Schweiker,* 749 F.2d 1066, 1070–71 (3d Cir.1984) (interpreting statutory standard). If the Secretary refuses to credit such testimony he must do so explicitly and give reasons for that decision. *Walden v. Schweiker,* 672 F.2d 835, 839 (11th Cir.1982). Where he fails to do so we hold as a matter of law that he has accepted that testimony as true. Here the appeals council notes that MacGregor testified that his pain permitted him to sit only 30 minutes and that standing was painful. The council made no other reference to MacGregor's pain testimony, neither explicitly rejecting it nor giving any reason why it might refuse to believe it. We therefore hold that as a matter of law MacGregor's pain testimony has been accepted by the appeals council as true.

■ When there have been nonexertional factors (such as depression and medication side effects) alleged, the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert. *Cowart v. Schweiker,* 662 F.2d 731, 736 (11th Cir. 1981). The appeals council has relied on the testimony of a vocational expert here who found claimant able to perform a wide range of sedentary jobs only when the testimony of Dr. Flynn concerning arthritic flareups and drug side effects was ignored and only when claimant's testimony on pain and his sitting/standing limitations was ignored. When the vocational expert considered any of these factors, which we have concluded stand unrefuted in the record, he stated that there would not be significant sedentary jobs available that claimant could perform. Since this was the only evidence in the record on the availability of jobs, we hold that there is no substantial evidence to support the Secretary's claim to have shown specific jobs that the claimant can perform.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED with instructions that it be re-

turned to the Secretary for the award of disability benefits.