James F. LAMB, A/N 252–48–2311,
Plaintiff-Appellant

v.

Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant-Appellee.

No. 87–3114.

United States Court of Appeals,
Eleventh Circuit.

June 16, 1988.

R. Jeremy Solomon, Tallahassee, Fla., J. Christopher Deem, Barkan & Neff Law Offices, Tampa, Fla., for plaintiff-appellant.

Ross A. Nabatoff, Alan G. Burrow, Asst. U.S. Attys., Tallahassee, Fla., for defendant-appellee.

Before RONEY, Chief Judge, ANDERSON, Circuit Judge, and ALLGOOD *, Senior District Judge.

ALLGOOD, Senior District Judge:

James F. Lamb appeals from the order of the district court affirming the Secretary of Health and Human Services' denial of his claim for Social Security disability benefits. Because we find that the decision of the Secretary lacks the support of substantial evidence and the proper application of legal standards, we reverse and remand.

Appellant was born September 20, 1928, has a fifth grade education and past relevant work experience as a construction project engineer. Appellant ceased working following a fall from a ladder on October 13, 1982. The fall resulted in compression fractures of the twelfth thoracic vertebra and the second lumbar vertebra. Appellant was admitted to Tallahassee Memorial Regional Medical Center for treatment of this injury on October 13, 1982 and was discharged on October 21, 1982 following a course of treatment which included bedrest, limited activities, muscle relaxers, pain medications and, eventually, back exercises to be continued following discharge.

On October 29, 1982, Dr. William J. Hutchison, an orthopedic surgeon, examined appellant. Dr. Hutchison indicated that after appellant's back injury, the appellant suffered temporary neck pain. However, after the injury, appellant continued to have mid-dorsal and lumbar pain. Dr. Hutchison reported that appellant suffered no radiation of pain.

Dr. Hutchison's physical examination of appellant disclosed that appellant had a moderate dorsal kyphosis and lumbar lordosis and a fifty percent limitation of back motion in all directions. No appreciable muscle spasm existed and appellant suffered no pain on straight leg raising. Dr. Hutchison also reported that the x-rays taken at Tallahassee Memorial Regional Medical Center revealed a compression fracture of the twelfth thoracic vertebra and a fracture of the second lumbar vertebra. Dr. Hutchison could not discern the age of the fractures, and ordered a bone scan. The positive bone scan indicated fresh multiple fractures of the dorsal and lumbar spine. Dr. Hutchison advised appellant to restrict his activities for three months to allow the fractures to heal and to obtain a lumbosacral corset.

On April 25, 1983, Dr. Hutchison reexamined appellant. The appellant complained of pain at the lumbosacral joint. A physical examination revealed that the appellant suffered a marked round back deformity but was not tender over that area. Appellant, however, was tender over the lumbosacral joint area. Appellant could flex forward to within six inches of touching the floor and suffered weakness of the left extensor hallicus longus muscle and pain on straight leg raising bilaterally. Recent x-rays disclosed bilateral pars defects at the L5 with a minimal spondylolisthesis of two or three millimeters.

Dr. Hutchison opined on July 1, 1983 that the appellant's multiple compression fractures were not a problem. The doctor concluded that appellant was probably symptomatic on the basis of the minimal spondylolisthesis. Dr. Hutchison, therefore, believed that an electromyography and a different back support were necessary for treating appellant's spondylolisthesis.

On May 16, 1983, Dr. Max E. Burr of the Hughston Orthopaedic Clinic, Columbus, Georgia, examined appellant. Dr. Burr's physical examination revealed that appellant moved slowly but suffered no acute distress. No obvious spinal deformity existed. Appellant was tender to palpation from about the mid back to the lower back, but the palpation was ill-defined. X-rays

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

revealed his compression fractures were healing. Dr. Burr concluded that the appellant suffered multiple compression fractures involving the lower thoracic and upper lumbar spine, approximately seven months old. Dr. Burr, however, could not determine the source of appellant's left leg pain. Dr. Burr recommended rehabilitative therapy.

In June 1983, Dr. Burr reexamined the appellant and concluded that appellant was improving. Appellant, however, still suffered pain. Dr. Burr still believed that rehabilitation constituted the most effective method to relieve appellant's pain. He also indicated at this visit that a return to any work was at least four to five months off.

On August 29, 1983, the appellant was seen again by Dr. Burr. At that time, the appellant was not improving. Appellant was still suffering left leg pain. The pain, however, was slightly improved. The doctor was unable to determine any neurological problems with the appellant, but appellant's compression fracture and left leg pain raised his suspicions. Dr. Burr suggested that appellant admit himself into a hospital for diagnostic studies.

On September 19, 1983, the Doctors Hospital, Columbus, Georgia, admitted appellant for diagnostic tests. The physical examination revealed an individual with no acute distress. Appellant moved slowly but easily. Appellant suffered increasing tightness in the lower thoracic region near the thoracolumbar junction and mild, vague tenderness to palpation about that area. No definite evidence, however, of sciatica, nerve root irritation, or neurological deficit existed. The origin of appellant's left leg pain was not determined, but it was concluded that a herniated nucleus polposus was not the source.

The hospital performed diagnostic tests. A lumbar myelogram suggested nerve root abnormalities on the right side. The abnormalities, however, were insignificant because the appellant suffered pain on his left side. A CT scan revealed a compression fracture of the T,12 vertebral body with an associated deformity of the epidur-al sac anteriorly. A bone scan indicated an abnormal uptake corresponding to compression fractures. The electromyogram was normal.

After the hospital performed the diagnostic tests, Dr. Burr informed appellant that there existed some evidence of pressure on the conus. He found no evidence of disk herniation. Dr. Burr decided to initiate physical therapy modalities consisting of heat, traction, dynawave and a Tens unit from which appellant obtained some relief. When the hospital discharged appellant, he was feeling considerably better. Dr. Burr decided to continue with observation and rehabilitation, but was unable to determine a disability or a prognosis for appellant.

On January 5, 1985, appellant returned to Dr. Burr. Intense muscle spasms were no longer a problem. Appellant continued to exercise and walk, but discovered that alleviation of pain was best accomplished by severely restricting his activities. Dr. Burr believed that appellant could not return to his usual and customary work. On June 19, 1984, Dr. Wilton R. Kane wrote a letter also indicating that appellant's activity restriction was not compatible with appellant's previous type of employment. On January 7, 1985, Dr. Burr opined that no further improvement could be expected and that appellant was permanently unemployable.

Appellant filed his initial application for disability and disability insurance benefits on June 23, 1983 claiming an onset date of October 13, 1982. The Social Security Administration denied appellant's initial application and his application for reconsideration. Appellant did not seek judicial review. On January 12, 1984, again claiming his back condition as the disability, appellant filed a second application for disability and disability insurance benefits. The Social Security Administration denied the second application and appellant's request for reconsideration. On April 30; 1984, appellant requested a hearing, and on June 19, 1984 an administrative law judge (ALJ) held a hearing. On August 8, 1984, the ALJ determined that appellant was entitled

to disability benefits commencing October 13, 1982.

The ALJ determined that the medical evidence indicated that appellant suffered residual status post compression fractures of the dorsal lumbar spine, minimal spondylolisthesis, and severe residual pain syndrome. The ALJ determined that the appellant's pain allegations were credible and that the objective medical evidence supported them. Additionally, the ALJ determined that appellant's severe impairment prohibited return to his prior medium exertional work activity, and therefore, appellant's residual functional capacity was reduced to sedentary work activity. After considering appellant's residual functional capacity, his age, his education and his work experience, the ALJ determined that the appellant was disabled and entitled to benefits.

The Appeals Council reviewed, on its own motion, the recommended decision and, applying 20 C.F.R. § 404.970(a)(3) (1986), determined that the decision of the ALJ was not supported by substantial evidence. The Secretary reversed the ALJ's decision. The Secretary, through the Appeals Council, determined that appellant suffered a severe skeletal impairment rendering him incapable of returning to his former employment and restricting his residual functional capacity to light work. The Secretary further concluded that appellant's pain allegations were inconsistent with the evidence. Moreover, the Secretary reasoned that appellant's skills were transferable to other jobs and, therefore, considering his residual functional capacity for light work, his age, his education and his work experience, the Secretary determined that appellant was not disabled. Appellant appealed the Secretary's decision to the United States District Court for the Northern District of Florida. The district court accepted the recommendation of the Magistrate affirming the decision denying benefits. Appellant appeals the district court's decision to this court.

■ The sole issue before this court is whether the decision of the Secretary is supported by substantial evidence and based upon proper legal standards. The scope of judicial review is limited to determining if there exists in the record, as a whole, substantial evidence to support the findings of the Secretary. 42 U.S.C. § 405(g); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.1983); *Smallwood v. Schweiker*, 681 F.2d 1349, 1351 (11th Cir. 1982); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982). The limited scope of review does not yield automatic affirmance, for "despite [this] deferential standard for review of claims ... [the] Court must scrutinize [the] record in its entirety to determine reasonableness of decision reached". *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). It is incumbent upon the reviewing court to examine the findings and decision of the Secretary in light of the record in its entirety, not only that evidence which supports the decision. *Owens v. Heckler*, 748 F.2d 1511 (11th Cir.1984); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir.1983); *Harrell v. Harris*, 610 F.2d 355 (5th Cir.1980). Further, the reviewing court must be satisfied that the decision of the Secretary is grounded in the proper application of the appropriate legal standards. "No presumption of validity attaches to Secretary of Health and Human Services' determination of proper legal standards to be applied." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir.1987). Failure to apply the correct legal standards is grounds not for remand but, for reversal. *Bowen v. Heckler*, 748 F.2d 629 (11th Cir.1984). We held in *Parker v. Bowen*, 788 F.2d 1512 (11th Cir.1986), "that in cases where the Appeals Council reverses an ALJ's decision on its own motion, judicial review is limited to determining whether the Appeals Council's decision is supported by substantial evidence.". *Id.* at 1520. See also, *Parker v. Bowen*, 793 F.2d 1177 (11th Cir.1986).

There exist at least a triad of errors justifying, if not demanding, a remand of this case. That is to say, not only are there questions as to the substantiality of the evidence supporting the decision of the Secretary, there are also instances of failure by the Secretary to follow the prescribed procedures at different junctures of the determination.

The proper standard to be applied in this circuit when evaluating complaints of disabling pain was clearly and succinctly articulated in *Hand v. Heckler,* 761 F.2d 1545 (11th Cir.1985), where we held that in determining whether the claimant suffers from disabling pain

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Id.* at 1549 (quoting S.Rep. No. 466, 98th Cong.2d Sess. 24 (1984)). See also, *Landry v. Heckler,* 782 F.2d 1551 (11th Cir.1986); *Sewell v. Bowen,* 792 F.2d 1065 (11th Cir. 1986).

There was obviously no question as to the existence of an underlying medical condition as the Secretary found that said condition rendered appellant unable to return to his former employment. Thus, the first prong of the standard was satisfied. The question then became if and how could claimant satisfy the second prong. The standard, by its own language, provides two methods of showing disabling pain: (1) by objective medical evidence confirming the severity of the alleged pain or (2) by showing that the underlying objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain.

■ The medical records did not disclose clinical documentation of the severity of the pain. Therefore, the assessment must have been whether the already proved underlying medical condition could reasonably be expected to give rise to the complained of pain. This is, without question, a subjective determination. However, freedom to make a subjective determination is not the equivalent of unbridled discretion. Whether or not the condition could be expected to give rise to the complained of pain is a question of fact subject to the substantial evidence standard of review. *Hand v. Heckler,* 761 F.2d 1545, 1549 (11th

Cir.1985); *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983).

■ In determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain, the fact-finder must also consider the credibility of claimant's testimony. Thus, there is the additional burden imposed by *Parker v. Bowen* where we held that although "the Appeals Council is not bound by the ALJ's credibility findings, ... when it rejects such findings, it should ordinarily do so expressly, articulating the reasons". 788 F.2d 1512, 1520 (11th Cir. 1986). The Appeals Council did not address the credibility of claimant's testimony as to pain but implicitly rejected the testimony by finding that the underlying medical condition could not reasonably be expected to produce the symptoms complained of.

To the contrary, the record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain. Surely the Appeals Council did not mean to suggest that lack of a cure or relieving treatment obviates the existence of pain produced by the condition. Such a proposition is belied by the documented existence of many painful yet untreatable illnesses. Further, the ALJ, who heard the testimony and observed the appellant, found his complaints credible. Though not bound by it, some credence must be afforded this determination by the ALJ. The ALJ observed the claimant and was in a better position to evaluate his veracity.

We find that the decision that "the Appeals Council believes that the objective clinical evidence does not reveal the existence of a radiculopathy or of an impairment as severely limiting as the claimant alleges it to be" and that "the degree of pain alleged by the claimant is inconsistent with, and not supported by, the evidence" is neither a proper evaluation of the evidence pursuant to the prescribed standards nor is it supported by substantial evidence

of record. Such findings amount not to a subjective determination based on the evidence but an unreasoned and unfounded rejection of appellant's allegations of pain.

■ Although not specifically addressed in the decision of the Appeals Council, considerable weight was obviously placed on the reports of two reviewing, nonexamining physicians. The Appeals Council preferred to adopt the findings of their nonexamining physicians, who observed few restrictions on claimant's activity, rather than accept the diagnoses of the physicians who examined appellant repeatedly over an extended period of time. Case law prohibits such a redistribution of the weight.

■ Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary. *Broughton v. Heckler,* 776 F.2d 960 (11th Cir.1985); *MacGregor v. Bowen,* 786 F.2d 1050 (11th Cir.1986). The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. *Spencer on Behalf of Spencer v. Heckler,* 765 F.2d 1090 (11th Cir.1985); *Strickland v. Harris,* 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. *Johns v. Bowen,* 821 F.2d 551 (11th Cir. 1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir.1987). Clearly the weight accorded the observations of the nonexamining physicians by the Secretary was inconsistent with the proper legal procedure. This procedural error compounds and highlights the incorrectness of the Secretary's decision.

The Secretary, in his brief, makes much of the fact that until January 7, 1985 Dr. Burr had not indicated that appellant was permanently unemployable; that Dr.

Hutchison in November of 1982 revealed that appellant could return to work in three months; that Dr. Kane never said appellant could not perform light work, and that Dr. Burr in June of 1983 indicated that in four to five months appellant could return to work.

Dr. Kane opined in June of 1984 that appellant's condition and the restriction of activity necessitated by the condition was not compatible with his former employment. It is true that Dr. Kane did not restrict appellant from light work. It is equally true that he did not recommend light work. In fact, Dr. Kane did not address the issue of any type of work but appellant's former work. Such silence is equally susceptible to either inference, therefore, no inference should be taken.

Dr. Burr opined in June of 1983 not, as the Secretary would have us believe, that appellant could return to some type of work in four to five months but that "we are probably still another four to five months away from getting him back to doing anything on a regular basis, and even then, we might find that [a] job change may be necessary". Dr. Burr's statement does not even rise to the level of a prognosis. It was a statement made in the course of treatment reflecting a generalized approach to treatment. It says, more than anything else, more than anything else, that a return to employment was not even a consideration for another four or five months.

Again with Dr. Hutchison, the Secretary colors what was written. Dr. Hutchison wrote upon review of the bone scan that "this patient should restrict his activities for at least three months in order to allow the fractures to heal" not that appellant could return to his former work in three months.

The fact that Dr. Burr had not found the appellant permanently disabled prior to January 7, 1985 is not inconsistent with his prior statements. Dr. Burr never stated that appellant would eventually be capable of returning to work. Rather, he proceeded with examining and treating the patient over an extended period of time and con-

sistent with his prior treatment and delays of return to work, Dr. Burr ultimately concluded that there could be no such return. This ultimate conclusion in no way contradicts his prior statements or treatment.

■ As if the above were not enough to demonstrate the lack of substantial evidence in support of the decision and the procedural errors made, the Appeals Council disregarded the expert vocational testimony submitted by appellant. We have held that the testimony of a vocational expert is only required to determine a disability claimant's residual functional capacity where claimant has proved he cannot return to his past work. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir.1987); *Chester v. Bowen*, 792 F.2d 129 (11th Cir.1986). *Chester* also held that where the medical evidence is inconclusive as to claimant's residual functional capacity, the record must be further developed through vocational expert testimony. *Id.* at 132.

It is undisputed by the Secretary that appellant is unable to return to his former employment. Thus, appellant met his initial burden and the question remained what work could be performed. The appellant supplied the expert vocational testimony regarding his residual functional capacity. The claimant's expert found him incapable of engaging in substantial gainful activity. The Appeals Council, without benefit of a medical advisor or an additional vocational expert, found claimant capable of light work and not disabled.

It is questionable upon what facts the Appeals Council made this determination since all evidence, other than the reports of two nonexamining Social Security Administration physicians, supports the position of appellant. The Appeals Council simply rejected the testimony of the vocational expert without contrary evidence and made its own determination notably lacking in evidentiary support and contrary to the standard procedure.

Because of the improper determination of claimant's residual functional capacity the outcome directed by the grid is irrelevant.

Because the recommended decision of the ALJ was supported by substantial evidence, reflected appropriate application of the proper legal procedures and properly considered and weighed all evidence, it is more expedient and equitable to simply reverse the decision of the Secretary and remand with instructions to adopt the recommended decision of the ALJ rather than remand for further administrative action. There is no need for additional evidence.

Accordingly, the decision of the District Court is reversed and the case remanded with instructions to remand to the Secretary for award of benefits consistent with the recommended decision of the ALJ dated August 8, 1984.

REVERSED and REMANDED.