Tommy J. **MARBURY**, Plaintiff–Appellant,

v.

Louis W. **SULLIVAN**, Secretary of Health and Human Services, Defendant–Appellee.

No. 91–7138.

United States Court of Appeals, Eleventh Circuit.

April 8, 1992.

Shelbonnie Coleman–Hall, Frank M. Smith, Legal Services Corp. of Alabama, Opelika, Ala., for plaintiff-appellant.

Calvin C. Pryor, Asst. U.S. Atty., Montgomery, Ala., Bruce R. Granger, Christine Bradfield, Elyse Sharfman, Mary Ann Sloan, Mack A. Davis, Office of the General Counsel, Atlanta, Ga., William S. Estabrook, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KRAVITCH, Circuit Judge, GODBOLD and JOHNSON *, Senior Circuit Judges.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

PER CURIAM:

In this Social Security case the administrative law judge denied benefits, and the Appeals Council affirmed. A magistrate judge recommended affirmance, and the district court found that the decision was supported by substantial evidence and affirmed. We reverse.

■ The ALJ correctly found that claimant suffers from nonexertional impairments including seizure disorder, peptic ulcer disease, and an affective disorder. He also found that petitioner could perform a wide range of light work and, therefore, it was not necessary to call a vocational expert to establish whether claimant can do work in the national economy. He found that Marbury's residual functional capacity for a full range of light work was reduced by his inability to work around unprotected heights or dangerous moving machinery, but that these impairments did not reduce the range of light work available to him. But "it is only when the claimant can clearly do *unlimited* types of light work, ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir.1989), quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981) (emphasis in original). Under the ALJ's findings it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights or dangerous moving machinery. Expert testimony was therefore required to determine whether Marbury's limitations were severe enough to preclude him from performing a wide range of light work. *Allen*, 880 F.2d at 1202. An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert. *Id.* It was therefore error to rely upon the grids. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985).

■ The ALJ also erred in evaluating Marbury's testimony concerning his pain. Pain alone can be disabling, even when its existence is unsupported by objective evidence. *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir.1987). The Secretary must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir.1986); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986). After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.1984). If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility. *Walker*, 826 F.2d at 1004. The medical evidence indicates that claimant did have a medical condition that could reasonably be expected to cause pain. Medical evidence includes reports of abdominal pain beginning in March 1983. In July 1983 Marbury was admitted for treatment after two days of worsening abdominal pain with nausea and vomiting. His treating physician noted that he had "severe abdominal pain with well documented history of peptic ulcer disease." In January 1985 he was again hospitalized after complaining of severe abdominal pain. An upper GI series showed two active ulcers, and the diagnosis was peptic ulcer disease. In November 1985 he was hospitalized because of recurrent, progressive seizures. An upper GI series revealed a lesion suggesting a chronic ulcer. At the hearing Marbury testified that his ulcer had become worse in the last three or four years, that his stomach hurts a lot, and that he has stomach pain when bending. After the hearing Marbury was hospitalized at a VA hospital due to abdominal pain, nausea and vomiting, with a diagnosis of acute pancreatitis and peptic ulcer

disease with a large gastric ulcer.[1] Evidence in the record thus indicates that the Secretary has not correctly considered claimant's complaints of pain.[2]

The ALJ noted that Marbury had been hospitalized for treatment of abdominal discomfort complaints which have quickly resolved. This interpretation of the medical history is not supported by the record's medical evidence. Claimant's January 1985 radiology report indicated the presence of active ulcers. In November 1985 he was diagnosed as having a long-standing history of peptic ulcer disease with multiple ulcerations. The record does not show resolution of the ulcer disease.

Additionally, the ALJ's evaluation of Marbury's reported seizure disorder was flawed. He characterized the seizure disorder as "questionable." But Marbury had been diagnosed with a "persistent and progressive frequent seizure disorder, etiology undetermined (probable psychogenic)." Although no organic cause for seizures has been determined, no physician has characterized the disorder as questionable. A seizure was observed by hospital nursing personnel in 1983. Marbury was hospitalized in 1986 after having a seizure in his physician's office. Relatives and friends have observed the seizures over several years and have described them to medical personnel.

Because of our decision on the other issues it is not necessary that we address claimant's contention that the Secretary did not adequately consider his impairments in combination.

REVERSED and REMANDED.

JOHNSON, Senior Circuit Judge, concurring specially:

Although I concur in the results reached by the majority, I write separately to emphasize what I believe to be the most important aspect of this case.

In this case, the administrative law judge (ALJ) largely disregarded the medical diagnoses of Marbury's psychogenically caused seizures as provided by Marbury's treating physicians. In his decision, the ALJ observed that Marbury had no history of seizures prior to 1985, that Marbury's physicians could not find any physical cause for the seizures, and that no disinterested person had observed the seizures occurring. Drawing upon only these observations, the ALJ chose to disregard the diagnoses of two treating physicians in favor of his own diagnosis that Marbury's claimed seizure disorder was "questionable."

An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053–54 (11th Cir.1986); *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985). Two medical diagnoses made at different times by different treating physicians revealed that Marbury did in fact suffer from a psychogenically caused seizure disorder. Nevertheless, in the case at bar, it is obvious that the ALJ accorded little or no weight to these diagnoses. An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him *in his private or personal capacity;* however, as a hearing officer he may not arbitrarily

---

1. The Appeals Council found that the report from this hospitalization showed no functional limitations in addition to those established by the ALJ. It is true that the hospitalization was for ulcer disease, which was already diagnosed, but this hospitalization provided additional and convincing evidence of an objectively determined medical condition, peptic ulcer disease with a large gastric ulcer, of a severity that could reasonably be expected to give rise to claimant's reported pain.

2. The ALJ acknowledged that the record contained reports of abdominal pain, but he determined that medical evidence did not demonstrate functional limitations because of ulcer disease such as would reasonably prevent Marbury from performing all types of substantial gainful work. This did not provide adequate reasons for discounting Marbury's complaints of pain.

substitute his own hunch or intuition for the diagnosis of a medical professional.

Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. *Lamb*, 847 F.2d at 703; *MacGregor*, 786 F.2d at 1053–54; *Broughton*, 776 F.2d at 961–62. Although the ALJ could have legitimately discounted the diagnoses, he could have done so only if he had clearly articulated his reasons for such action. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir.1987). Moreover, the ALJ's proffered reasons for discounting the diagnoses had to be supported by substantial evidence. *Lamb*, 847 F.2d at 703. In this case, the ALJ has not articulated *any* valid reasons for calling into question the diagnoses—much less supported his medical conclusions with substantial or considerable evidence.[1]

Although Social Security disability benefits must be reserved only for those who qualify to receive them, an ALJ may not arrogate the power to act as both judge and physician. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

---

1. Indeed, the ALJ did not even have before him a diagnosis from a non-treating physician that supported his medical conclusions. *Cf. Lamb,* 847 F.2d at 703.