**Tammie BARBER, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.06 G 0598 J.**

United States District Court,
N.D. Alabama,
Jasper Division.

Nov. 8, 2006.

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Plaintiff.

Arthurice T. Brundidge, Social Security Administration–Office of General Counsel, Atlanta, GA, Lane H. Woodke, US Attorney's Office, Birmingham, AL, for Defendant.

### *MEMORANDUM OPINION*

GUIN, District Judge.

The plaintiff, Tammie Barber, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. According-

ly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Jerome Munford, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote,* at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote,* at 1558–59. The presence of a nonexertional impairment also prevents exclusive reliance on the grids. *Foote,* at 1559. In such cases "the [Commissioner] must

seek expert vocational testimony." *Foote,* at 1559.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *accord Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." *MacGregor,* 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor,* 786 F.2d at 1053; *Elam,* 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor,* 786 F.2d at 1054; *cf. Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. *See Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275, 1280 (9th Cir.1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In *Varney v. Secretary of Health and Human Services,* 859 F.2d 1396 (9th Cir. 1988), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is ac-

cepted as true as a matter of law. *Id* at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." *Id.* If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As *Varney* recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. *Id.* This also holds true for the opinions of treating physicians.

## DISCUSSION

In the present case, the plaintiff alleges disability due to her mental illness. On March 22, 2002, the plaintiff's treating psychiatrist diagnosed her as suffering from Major Depression and Anxiety Disorder. [R 152] The plaintiff was given a GAF score of 38.[1] The plaintiff was also assessed by Social Security consulting psychiatrist, Dr. Huggins, on July 18, 2003. Dr. Huggins diagnosed Major Depressive Disorder. [R 158] Dr. Huggins also assessed the plaintiff as having a GAF score of 50 and included descriptive language following the score: "GAF 50; Mental, physical, social, financial and occupational functioning, inability to hold a job, few friends, decreased motivation and extra pyramidal side effects from neuroleptic medications."[2] Dr. Huggins on a medical source statement (mental) indicated the plaintiff would have "Marked" restrictions in her ability to "[r]espond appropriately to customers or other members of the general public"; to "[u]nderstand, remember, and carry out simple, one and two-step instructions"; to "[u]nderstand, remember and carry out detailed or complex instructions"; and to "[m]aintain attention, concentration or pace for periods of at least two hours." [R 159–60] Dr. Huggins opined the plaintiff would have a moderate to marked impairment in her ability to "[r]espond appropriately to co-workers." [R 159]

The vocational expert ("VE") was asked about the significance of GAF scores of 50 and 38. She testified that a GAF score of 50 "would preclude work opportunity" and that a GAF score of 38 "is even more serious and would also preclude work." [R 216] Therefore, unless both the plaintiff's treating psychiatrist and the Commissioner's consulting psychiatrist are properly discredited by the ALJ, the plaintiff is disabled.

 The ALJ failed to even address the GAF score of 38 by the plaintiff's treating psychiatrist. He rejected Dr. Huggins' medical opinions as to the level of impairment caused by the plaintiff's mental illness because he found them inconsistent with the body of his own report. [R 20] The ALJ's reasoning makes it clear that

---

1. The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM–IV–TR"). A rating of 31–40 reflects: "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM–IV–TR at 34 (emphasis in original).

2. A GAF of 41–50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM–IV at 32 (emphasis in original).

he is substituting his own opinions for those of two psychiatrists. In cases involving mental illness, the opinions of mental health professionals are especially important

The present case bears a resemblance to the situation in *Wilder v. Chater*, 64 F.3d 335 (7th Cir.1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The *Wilder* court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the *only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself* to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and *health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.* The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and *the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight.* We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

*Id.* at 337 (emphasis added) (citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in *Marbury v. Sullivan,* as follows:

> An ALJ sitting as a hearing officer *abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians:* "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity;* however, as a hearing officer *he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.*

Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .

Although Social Security disability benefits must be reserved only for those who qualify to receive them, *an ALJ may not arrogate the power to act as both judge and physician.* The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and

instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840–41 (11th Cir.1992)(italics in original)(emphasis added).

██ In the present case, it is apparent that ALJ Munford has abused his discretion by substituting his own medical judgments for those of two examining psychiatrists. There is no substantial medical evidence contradicting the findings and opinions of these two psychiatrists. The ALJ cites to the evaluation by a non-examining medical consultant to support his rejection of the two examining psychiatrists. This reliance is improper in this Circuit:

> The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. *Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090 (11th Cir.1985); *Strickland v. Harris*, 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. *Johns v. Bowen*, 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir.1987).

*Lamb v. Bowen* 847 F.2d 698, 703 (11th Cir.1988). In this case, as in *Lamb*, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure." *Id.*

The court concludes that substantial evidence does not support the ALJ's decision not to credit the opinions of the plaintiff's treating psychiatrist or those of the Commissioner's consulting psychiatrists. Based upon these opinions and the testimony of the VE, the Commissioner failed to carry her burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the

receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*