**Gary V. HILL, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**Civil Action No. 05–G–1046–M.**

United States District Court, N.D. Alabama, Middle Division.

July 25, 2006.

Melissa Boles Horner, RD Pitts & Associates PC, Birmingham, AL, for Plaintiff.

Edward Q. Ragland, U.S. Attorney's Office, Birmingham, AL, Roy F. Satterwhite, III, Social Security Administration–Office of General Counsel, Atlanta, GA, for Defendant.

## *MEMORANDUM OPINION*

GUIN, District Judge.

The plaintiff, Gary V. Hill, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Jerome L. Munford, determined the plaintiff met the first two tests, but concluded he did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote*, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote*, at 1558–59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. *Foote*, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Foote*, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote*, at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)). In this circuit medical evidence of pain itself, or of its intensity, is not required.

While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reason-

ably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *accord Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight...." *MacGregor,* 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor,* 786 F.2d at 1053; *Elam,* 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor,* 786 F.2d at 1054; *cf. Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### DISCUSSION

In the present case the plaintiff testified that he is disabled due to back pain. Records from the plaintiff's treating physician, Dr. Savage, show that in October 2002 he reported a flare up of back pain. Dr. Savage found generalized tenderness in the lumbar region and pain on motion ("POM") and loss of motion ("LOM") of the lumbar spine. A x-ray showed "degenerative changes at multiple levels." [R 135] Dr. Savage found that the plaintiff "has severe degenerative disc disease and

is unable to obtain gainful employment." [R 135] Vioxx samples were given. On January 15, 2003, Dr. Savage again found generalized tenderness in the lumbar region and pain on motion. [R 134] Dr. Savage prescribed Lortab and Ibuprofen. [R 134] Dr. Savage noted the plaintiff was "unable to do gainful employment." [R 134] On April 23, 2003, Dr. Savage noted the plaintiff had improved, but again found generalized tenderness in the lumbar region and pain on motion. [R 133] On July 21, 2003, Dr. Savage reported that the plaintiff "has continued to have pain." [R 132] Dr. Savage again found generalized tenderness, pain on motion, and loss of motion in the lumbar spine. [R 132] Dr. Savage ordered a Myelogram and CT scan to rule out an HNP. A lumbar corset was prescribed. [R 132]

A CT scan and myelogram were performed August 25, 2003. Both showed that the plaintiff has multi-level disc disease. [R 164] The radiology report from the CT scan shows the following:

L2–3: There is mild facet arthropathy.

L3–4: There is a vacuum disc, posterior broad based disc bulging, anterior lateral endplate osteophytes, and facet hypertrophy. There is stenosis of the right neural foramen. There are intravertebral disc herniations within the superior aspect of L4.

L4–5: There is a vacuum disc. There is a posterior broad based disc bulging and facet arthropathy. There is bilateral mild neural foramina stenosis.

L5–S 1: There is posterior broad based disc bulging and facet arthropathy.

There is mild left sided neural foraminal stenosis. There is a small posterior focal central disc protrusion which causes mild impression on the ventral thecal sac. [R 164]

The plaintiff was seen by a consulting examiner at the request of the Social Security Administration on November 22, 2002. Dr. Matic found the plaintiff's lumbar spine had "tense paravertebral lumbar muscles." [R 120] No localized tenderness to palpation was found. Dr. Matic found the plaintiff's range of motion in the lumbar spine to be "only 30% of normal in all directions except that Mr. Hill is unable to bring his spine backwards at all as a result of pain." [R 120] Dr. Matic's diagnostic assessment was chronic low back pain, status post lumbar surgery, and degenerative joint disease in multiple joints. [R 120] Dr. Matic expressed no opinion as to whether or not the plaintiff could work and did not indicate whether or not the plaintiff's activities would be limited due to his condition.

The plaintiff was seen by Dr. Ganuza on January 20, 2004, at the request of his attorney. Dr. Ganuza found the plaintiff to be in moderate to severe distress. [R 168] He found the plaintiff to be "obviously depressed." [R 169] Dr. Ganuza's examination of the plaintiff's lumbar spine found the following:

Painful to palpation and motion. There are muscle spasms in the vertebral muscle in the upper half of the lumbar spine. Motion elicited pain in all directions. The sacroiliac joints were minimally tender. The Lassegue [sic] maneuver[1] is

---

1. A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶ 5) The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." *Dorland's Illustrated Medical Dictionary* 1525 (28th Edition).

strongly positive in the left side and slightly on the right.

[R 169] Dr. Ganuza diagnoses included: "Herniated disc at L3/4, L4/5 and L5/S 1 with compression of the sciatic nerve roots. There is significant foraminal stenosis." [R 169] Dr. Ganuza also diagnosed osteoarthritis and depression. [R 169] His report also includes the following note: "This patient has a significant problem in his lumbar spine and it needs to be treated more aggressively. He may benefit from internal disc decompression. He is a candidate for surgery. He needs an opinion from a neurosurgeon." [R 170]

In connection with his examination, Dr. Ganuza completed a physical capacity evaluation ("PCE"). On that form, Dr. Ganuza indicated the plaintiff would be able to sit, stand, and walk for zero hours at one time. [R 171] It was Dr. Ganuza's opinion that the plaintiff could only sit for a total of 3 hours, stand for a total of 1 hour, and walk for a total of 1 hour in an eight-hour day. [R 171] Dr. Ganuza stated that the medical basis for his opinions was the following: "Severe multi-level disc bulging and herniation with froaminal stenosis and nerve root compression." [R 171] Dr. Ganuza indicated the plaintiff had chronic, continuous severe pain as a result of his condition. [R 173] It was Dr. Ganuza's opinion that the plaintiff would be likely to miss three or more days of work per month as a result of his medical condition. [R 173]

At his ALJ hearing, the plaintiff testified that in his home he does not normally go up the stairs at his house because of his pain. [R 200] He testified that his wife helps him put on his shoes and any other activity that requires bending. [R 201] He was asked what his "pain level is right now." [R 202] He responded that it was between four and five and that he was currently taking Vioxx and ibuprofen. [R 202] When asked whether the pain gets worse than a four to five, he responded:

"Absolutely, if I do—if I have to bend or lift. Usually it's—I've learnt not to do things." [R 203] The plaintiff was asked how much he could pick up. He responded: "Well, I was told my granddaughter weighs 30 pounds, and I can't pick her up and deal with her very well." [R 203] He testified that his pain got worse than a four or five on a daily basis. [R 204] He also testified that because of his pain, he lies down off and on for an hour each day. [R 204]

█ In spite of the overwhelming medical evidence, the ALJ found that the plaintiff did not meet the Eleventh Circuit's pain standard. It is difficult to imagine how an ALJ could find that multiple herniated discs and severe degenerative disc disease diagnosed by treating physicians and confirmed via CT and Myelogram scans fails to satisfy the pain standard. *See e.g. Hale v. Bowen,* 831 F.2d 1007 (11th Cir.1987)(finding that cervical nerve root compression syndrome, mild lumbar scoliosis and degenerative disc disease satisfy the pain standard); *Jenkins v. Sullivan,* 906 F.2d 107, 109 (4th Cir.1990)(finding degenerative disc disease and an ankle injury to be conditions which could reasonably be expected to produce disabling pain). The ALJ's finding that the plaintiff did not satisfy the pain standard is irrational and not supported by substantial evidence.

Even though he concluded the plaintiff did not satisfy the pain standard, the ALJ nonetheless discussed the plaintiff's pain testimony: "The claimant testified at the hearing that his pain was no more than a level four to five on a scale of one to ten so long as he restricted his activities." [R 21] The plaintiff's testimony was in fact that his pain exceeded a four or five on a daily basis:

Q: Did—now how often say during the week would your pain level get to where it's more than four of five?

A: I—it does it daily. It—daily. If I push it at all. Normally daily, yeah. Like I walk until I can't do it anymore and then I'll sit down. And I never catch myself away or I'm not at home and I try to be at home all the time. I can lay down, I can—I don't have to worry about being caught where I can't get home.

[R 204] Nor did the plaintiff testify that his pain was always at a level of five or below, even if he restricted his activities.

The ALJ found the plaintiff "retains the residual functional capacity to perform light work which allows for a sit/stand option; no more than occasional twisting, bending, stooping or pushing and pulling involving the upper extremities; no pushing or pulling involving the lower extremities; no climbing; no work at unrestricted heights." [R 24]

The ALJ concluded that as long as the plaintiff "complies with his assigned residual functional capacity, his pain ... [is] reasonably expected to impose no greater than moderate functional restrictions upon his ability to engage in basic work activities. ..." [R 24] The Commissioner's regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b) Even allowing for a sit/stand option, the plaintiff's testimony cannot reasonably be construed to be consistent with the ALJ's RFC determination. Therefore, the ALJ's refusal to credit the plaintiff's testimony that he suffers from pain at a disabling level is not supported by substantial evi-

dence. Accordingly, that testimony must be accepted as true.

■ The plaintiff's treating physician, Dr. Savage, opined that the plaintiff was unable to engage in gainful employment. On January 15, 2002, Dr. Savage noted the plaintiff was "unable to do gainful employment." [R 134] The ALJ, however, determined that Dr. Savage did not mean what he clearly said:

> The claimant has been treated for many years by Dr. Savage, Sr., who has not reported that he believed the claimant to be disabled due to his back pain and limitations. Although Dr. Savage reported in October 2002 that the claimant was unable to obtain gainful employment, and in January 2003 that the claimant was unable to do gainful employment, he appears to have based these statements on the claimant's subjective allegations to him of an inability to work. This is confirmed by Dr. Savage's statement in April 2003 that the claimant needed a functional capacity evaluation. Dr. Savage would not have stated that a functional capacity evaluation was needed if he already believed the claimant was unable to perform work on a sustained basis.

[R 22] To paraphrase the ALJ asserts that the plaintiff's treating physician had not reported the plaintiff was unable to work even though he had reported exactly that. There is nothing in Dr. Savage's notes to indicate that he based his statements on the plaintiff's subjective complaints.[2] One important aspect of the Commissioners' duty to develop a fair and complete record is her duty to recontact a claimant's treating physician. The Commissioner's regulations provide as follows:

---

2. However, even if he had based his opinions on the plaintiff's subjective complaints, this would still lend support to the plaintiff's testimony of disabling pain.

(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e). Rather than requesting clarification from Dr. Savage, the ALJ explained away Dr. Savage's opinion based on nothing more than his speculation as to what Dr. Savage really meant. Basing a rejection of Dr. Savage's clearly stated opinion that plaintiff was "unable to do gainful employment" on such speculation is not proper. An ALJ is not free to base his decision on speculation or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in *Marbury v. Sullivan*, as follows:

An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988).... An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity;* however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840–41 (11th Cir.1992)(emphasis in original).

Dr. Savage was not the only doctor that the ALJ refused to credit:

Only Dr. Ganuza has reported that the claimant had disabling pain and physical limitations, and his conclusions are unsupported by the remainder of the treating and examining medical evidence, and even the claimant's own testimony regarding his level of pain and limitations. Dr. Ganuza reported that the claimant had chronic, continuous, severe pain, but the claimant testified at the hearing that, so long as he restricted his activity, his pain was no more than a level four to five on a scale of one to ten, at the moderate level. This is not consistent with Dr. Ganuza's conclusion.

[R 22] As discussed above, the plaintiff did not testify that his pain was always at a four of five level if he restricted his activities to the ALJ's RFC. Dr. Ganuza was giving his opinion about the plaintiff's pain in connection with his ability to work and the form makes this clear. The following is the form wording where Dr. Ganuza checked indicating severe pain: "(X) **SEVERE** (Would preclude the activity precipitating the pain.)" This makes it clear

that Dr. Ganuza indicated the plaintiff's pain would be such that the plaintiff would refrain from the activity precipitating the pain. Although the form is somewhat ambiguous as to what that activity would be, that it was included on a form addressing the plaintiff's ability to work is highly relevant. It is unreasonable to read Dr. Ganuza's indication of severe pain without considering the context of the form that he was asked to complete.

The ALJ also found support for his decision based upon a string of things not reported or not testified to. For example, the ALJ stated as follows: "Dr. Matic examined the claimant in November 2002 and did not report that he believed the claimant to have disabling pain or limitations." [R 22] Dr. Matic was the Commissioner's consultant and it is disturbing that he gave *no opinion as to the plaintiff's* ability to work or as to the level of pain experienced by the plaintiff. In *Lamb v. Bowen*, 847 F.2d 698 (11th cir.1988), the court discussed a similar situation:

> The Secretary, in his brief, makes much of the fact that until January 7, 1985 Dr. Burr had not indicated that appellant was permanently unemployable; that Dr. Hutchison in November of 1982 revealed that appellant could return to work in three months; that Dr. Kane never said appellant could not perform light work, and that Dr. Burr in June of 1983 indicated that in four to five months appellant could return to work. Dr. Kane opined in June of 1984 that appellant's condition and the restriction of activity necessitated by the condition was not compatible with his former employment. *It is true that Dr. Kane did not restrict appellant from light work. It is equally true that he did not recommend light work. In fact, Dr. Kane did*

> *not address the issue of any type of work but appellant's former work. Such silence is equally susceptible to either inference, therefore, no inference should be taken.*

*Id.* at 703 (emphasis added). In the present case, Dr. Matic's report is silent on the issue of whether he believed the plaintiff's pain was disabling. Therefore, it is improper to draw an inference from that silence.

The ALJ improperly used the absence of testimony to support his decision. This is made abundantly clear in the following discussion of the plaintiff's testimony:

> The claimant testified at the hearing that he had to frequently change position, *but he did not indicate that he was unable* to sit, stand, and walk for eight hours total in an eight hour day. He *did not state that he was unable* to lift and carry more than five pounds, despite Dr. Ganuza's statement that he was so limited. The claimant testified that he was unable to lift as much as 30 pounds, but *did not testify that he would be unable* to lift ten to 20 pounds.

[R 22 (emphasis added).] While the ALJ's observations are true, the ALJ's inference of a positive ability based upon the mere fact that the plaintiff did not deny the ability is improper. The plaintiff also *did not testify that he was unable* to leap tall buildings or stop speeding bullets. His silence should not be taken to mean that he believed he was Superman. Likewise, any fair reading of the plaintiff's testimony[3] makes clear that his silence on the issues cited by the ALJ is irrelevant. In addition, there is a cruel irony in the ALJ's assertions since it was he, the ALJ, who presided over the hearing. If the ALJ had wished to know whether the plaintiff be-

---

**3.** The clear and unmistakable import of the plaintiff's testimony was that he was unable to sustain work for an eight-hour day and was unable to lift objects in a work setting without severe pain.

lieved he could do any of these things, he could have asked.

The plaintiff's treating physician, Dr. Savage believed the plaintiff was "unable to do gainful employment." Dr. Ganuza believed the plaintiff was disabled due to pain. The reasons put forth by the ALJ for refusing to credit these two physicians are not supported by substantial evidence. Their opinions are supported by CT and myelogram scans. Even the Commissioner's consultant, Dr. Matic found the plaintiff's range of motion in the lumbar spine severely limited due to pain. In short, there is no medical evidence in the record contradicting the opinions of Drs. Savage and Ganuza and the ALJ's rejection of those opinions is not supported by substantial evidence.

## CONCLUSION

 Based upon either the plaintiff's own testimony (which was not properly discredited) or the uncontradicted opinions of Drs. Savage and Ganuza, the ALJ's finding as to the plaintiff's RFC is not supported by substantial evidence. Therefore, the Commissioner failed to carry her burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. *Id.* An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

## FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DE-CREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*