[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-12805
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 26, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00098-CV-5

TOMMIE KEMP, JR.,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 26, 2009)

Before ANDERSON, BIRCH  and HULL, Circuit Judges.

PER CURIAM:

Tommie Kemp ("Kemp") appeals the district court's order affirming the

Social Security Administration's ("SSA") denial of disability insurance benefits. Kemp argues that the Administrative Law Judge ("ALJ") erred by (1) finding that his post-traumatic stress disorder ("PTSD") did not constitute a severe impairment; (2) failing to place great weight on the disability percentages that the Veterans' Administration ("VA") assigned to Kemp; (3) relying on the reports of non-examining physicians to determine that Kemp had the residual functional capacity to perform medium work; (4) finding that Kemp was literate; and (5) discrediting Kemp's testimony regarding the nature, intensity, and duration of his symptoms solely because the ALJ found that Kemp had testified incredibly regarding his literacy. For the reasons set forth, we affirm.

## I. BACKGROUND

Kemp filed an application for disability benefits, claiming that he was unable to work because of a disabling condition since November 1, 2000. Kemp later amended the date of the onset of his disability to January 1, 2002. Kemp identified back injuries, PTSD, high blood pressure, diabetes, shortness of breath, and a heart condition. After the Commissioner denied his application, Kemp obtained a hearing from an ALJ. The ALJ determined that Kemp's PTSD was not a severe impairment and that his other conditions did not meet or equal the listed impairments to receive benefits. The ALJ determined that Kemp maintained the

residual functional capacity to perform medium work. The ALJ denied benefits. A magistrate judge recommended that Kemp's case should be remanded for further proceedings; however, the district court was not persuaded and entered judgment affirming the Commissioner and dismissing the case.

## II. STANDARD OF REVIEW

We review a social security case de novo when reviewing the legal principles underlying the ALJ's decision, but review "the resulting decision only to determine whether it is supported by substantial evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted). We may not reweigh the evidence or substitute our own judgment for that of the ALJ, even if we find that the evidence preponderates against the ALJ's decision. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Where an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

## III. DISCUSSION

The Social Security regulations set forth the following five-step "sequential evaluation" process to determine whether a claimant is disabled: (1) the disability examiner determines whether the claimant is engaged in "substantial gainful activity"; (2) if not, the examiner decides whether the claimant's condition or impairment is "severe," i.e., whether it significantly limits claimant's physical or mental ability to do basic work activities; (3) if so, the examiner decides whether the claimant's impairment meets or equals the severity of the specified impairments in the Listing of Impairments ("Listing"), thereby precluding any gainful work activity; (4) if the claimant has a severe impairment that does not meet or equal the severity of an impairment in the Listing, the examiner assesses a claimant's "residual functional capacity," which measures whether a claimant can perform past relevant work despite the impairment; and (5) if the claimant is unable to do past relevant work, the examiner determines whether, in light of residual functioning capacity, age, education, and work experience, the claimant can perform other work. Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. §§ 404.1520 (c)-(f), 416.920(c)-(f).

A. Whether the ALJ erred in determining that Kemp's PTSD did not constitute a severe impairment

Kemp argues that the ALJ erred in finding that his PTSD did not constitute a

4

severe impairment because the ALJ's determination was not supported by substantial evidence, the ALJ discredited the opinions of the VA and Kemp's physicians, and the ALJ erroneously asserted that Kemp never reported mental health symptoms to the VA.

The claimant bears the burden of showing that he has a severe impairment or combination of impairments.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  An impairment is not severe if it does not significantly limit one's physical or mental ability to do basic work activities.  20 C.F.R. §  404.1521(a);  see also Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993) (stating that an impairment is severe if it "causes more than a minimal limitation on a claimant's ability to function").  Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, reaching, and carrying; (2) the capacity to see, hear, and speak; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).

In assessing Kemp's PTSD, the ALJ acknowledged that the VA rated Kemp as 30% disabled.  However, the ALJ determined that the available evidence did not support treating Kemp's PTSD as a severe impairment under the SSA guidelines.

5

The ALJ relied on the report from a treating physician, Jack Gibbs, M.D., stating that Kemp was doing well with his medication to control the symptoms. The physician noted that Kemp was able to follow complex instruction, that his memory was good, and that his intellect appeared normal. These findings were all made with the understanding that Kemp had PTSD; however, the reports suggest that the medication kept Kemp's symptoms manageable. Furthermore, Kemp repeatedly reported that he was not depressed. The ALJ also considered Dr. Acker's report finding that Kemp could carry out simple instructions, but would have some difficulty getting along with others due to back pain and depression. The ALJ assigned less value to Dr. Acker's report due to discrepancies in his opinion. The ALJ weighed the evidence and determined that Kemp failed to meet his burden at step two of the evaluation process because Kemp was unable to establish that PTSD was a severe impairment.

The evidence provides a substantial basis to support the ALJ's determination that Kemp's PTSD was not a severe impairment, as well as a sufficient basis for the ALJ to give less weight to the opinions of the VA and Kemp's physicians regarding his PTSD. Additionally, as to whether the ALJ erred in asserting that Kemp never reported mental health symptoms to the VA, any factual mistake the ALJ made is harmless in light of the rest of the evidence.

B.  Whether the ALJ failed to give great weight to the disability ratings the VA assigned to Kemp

Kemp asserts that the ALJ failed to give the disability ratings that the VA assigned to Kemp great weight.  "A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight."  Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir. 1981).  The SSA regulations specify that a decision by any non-governmental or governmental agency about whether an individual is disabled is based on its own rules and does not constitute a SSA decision about whether an individual is disabled.  20 C.F.R. § 404.1504.

The ALJ must "state specifically the weight accorded to each item of evidence and why he reached that decision."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  We have recognized, however, that the ALJ may implicitly make a determination.  See Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (recognizing that the ALJ may make an implied finding that a claimant did not meet a listed impairment).

In this case, the ALJ did not specifically state that he gave great weight to the VA's disability ratings.  However, the ALJ continuously refers to the VA's evaluations and disability rating throughout the evaluation process.  The ALJ gave specific reasons for why the VA's 30% disability rating based on PTSD did not

7

qualify the condition as a severe impairment under the SSA guidelines. The ALJ relied on the VA's diabetes determination in finding that the diabetes was a severe impairment. Furthermore, the ALJ relied on VA records to determine that Kemp had cervical spondylosis, that Kemp had mild carpal tunnel syndrome, and that Kemp could walk up to a mile and climb two flights of stairs.

The ALJ relied on the VA records and referenced the disability ratings, in addition to rest of the relevant evidence, throughout his decision. As a result, he implicitly found that the VA disability ratings were entitled to great weight.

C. Whether the ALJ erred in adopting and relying on non-examining physicians in determining Kemp's residual functional capacity

Kemp argues that the ALJ erred in adopting and relying on the findings of non-examining physicians in order to determine that Kemp had sufficient residual functional capacity to perform medium work. The residual functional capacity determination is based on all of the evidence in the record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1). The opinion of a non-examining physician is entitled to little weight when it contradicts the opinion of an examining physician. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Where a non-examining physician's report includes information that is not contained in the examining physicians' reports, but does not contradict the examining physicians' reports, the ALJ does not err in relying on the non-

8

examining physician's report to the extent it contains non-contradictory information. See Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991). Nevertheless, the opinion of a non-examining physician, standing alone, does not constitute substantial evidence. Lamb, 847 F.2d at 703.

The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. See 20 C.F.R. § 404.1527(d)(3)-(4); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion. 20 C.F.R. § 404.1527(d)(4).

The ALJ relied on a non-examining physician's opinion in determining that Kemp's residual functional capacity was medium in part because no treating physician ever determined Kemp's residual functional capacity. Furthermore, Dr. Gertler's opinion (the non-examining physician) was based on his review of the medical records including reports from one of the examining physicians. Dr. Gertler relied on Dr. Wallace's opinion (an examining physician) that Kemp had a

9

normal gait, normal reflexes, and a full range of motion in all of his joints with the exception of the cervical and lumbar spine. Dr. Gertler determined that Kemp could lift up to 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in a workday, balance, crawl, and occasionally stoop. Evidence from the VA medical records also indicated that Kemp had good strength and range of motion and that many of his symptoms were not severe.

In determining that Kemp could perform medium work, the ALJ did not err in relying on the opinions of non-examining physicians because these opinions were consistent with the opinion of examining physicians as well as with the other medical evidence in the record.

D. Whether the ALJ's determination that Kemp was literate is supported by substantial evidence

Kemp argues that the ALJ's determination that Kemp was literate is not supported by substantial evidence, and that the ALJ erred by discrediting evidence that Kemp was illiterate. The ALJ must state with particularity the weight given to different medical opinions and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ should consider a physician's opinion in accordance with the factors set forth in the guidelines: (1) the examining relationship; (2) the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d). The Commissioner

10

may reject any medical opinion if the evidence supports a contrary finding. Syrock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Where an ALJ discredits a claimant's subjective testimony, he must articulate explicit reasons, supported by substantial evidence, for doing so. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

There is some dispute as to the level of education attained by Kemp. Some records indicate that Kemp only completed sixth grade while others indicate that he graduated from high school. The ALJ did not solely base his conclusion that Kemp was literate on the reports stating that Kemp graduated high school. The ALJ determined that Kemp's promotions in the military, his expert rating on operating weapons, and his previous employment as a dry feeder that required him to read and write reports all pointed to Kemp being literate. The ALJ determined that Kemp's subjective testimony was not credible based on the fact that Kemp's records had so many discrepancies regarding his educational history and that his employment and military history contradicted his direct testimony that he was illiterate. The ALJ gave specific reasons why Kemp's testimony lacked credibility and provided specific reasons for the determination that Kemp is literate.

Although there is some evidence in the record suggesting that Kemp might be illiterate, the evidence provided a substantial basis to support the ALJ's

11

determination that Kemp was literate as well as a sufficient basis for the ALJ to discredit evidence that Kemp was illiterate.

     E.  <u>Whether the ALJ erred by determining that Kemp's testimony regarding his symptoms was not credible</u>

Kemp argues that the ALJ erred in finding that his testimony regarding the intensity, effect, and duration of his symptoms was not credible solely because he found that Kemp had not credibly testified regarding his literacy.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so. <u>Wilson</u>, 284 F.3d at 1225. A reviewing court should not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. <u>Foote</u>, 67 F.3d at 1561-62.

Despite Kemp's contention, the ALJ did not solely base his determination that Kemp's testimony regarding his symptoms was not credible on the ALJ's determination that Kemp had lied about being illiterate. A reading of the ALJ's decision reveals that the ALJ relied on objective medical evidence and evidence of Kemp's daily activities to determine Kemp's disability status. The ALJ looked at the reports from the VA and examining physicians along with Kemp's daily activity reports. Furthermore, the ALJ noted that Kemp stopped working because the plant shut down, not due to any physical incapacitation. The medical evidence in the record, together with the ALJ's finding that Kemp had not credibly testified

12

regarding his literacy, provided a substantial basis to support the ALJ's determination that Kemp did not credibly testify regarding the nature, intensity, and duration of his symptoms.

## IV. CONCLUSION

Based on the foregoing, the opinion of the district court is affirmed.

AFFIRMED.