[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16676
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00350-CV-OC-GRJ

VICTORIA J. SNYDER,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee,

SSA,

Interested Party.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 29, 2009)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Victoria J. Snyder appeals from the district court's order affirming the Commissioner of Social Security's denial of her application for disability benefits and supplemental security income ("SSI"). This appeal involves whether the Administrative Law Judge ("ALJ") properly considered the claimant's testimony and her treating physician's opinion. After review, we reverse and remand for further proceedings.

## I. BACKGROUND

### A. 2004 Hearing

Snyder contracted Hepatitis C in 1981 after receiving a blood transfusion. Snyder's condition was not diagnosed until 1991, when her symptoms, including fatigue, joint and liver pain and low grade fever, began to bother her. She stopped working as a waitress in October 2000.

In November 2001, Snyder applied for disability benefits and SSI. Snyder alleged that, as of May 1, 2000,[1] she was disabled due to her Hepatitis C. Since 2001, Dr. L.A. Oliverio has been Snyder's treating physician. The record contains a February 2004 assessment by Dr. Oliverio of Snyder's ability to do work-related activities, or "functional capacity," which Dr. Oliverio based primarily upon

---

[1]Snyder later amended her disability onset date to November 1, 2001.

Snyder's "clinical history." In the assessment, Dr. Oliverio opined that Snyder: (1) occasionally could carry less than 10 pounds; (2) could stand and sit for less than 2 hours each during an 8-hour work day and could sit for 10 to 15 minutes before changing position and stand for 5 to 10 minutes before changing position; (3) would need to walk around every 5 to 10 minutes for a 5 to 10-minute period during the work day; (4) would need to shift at will from sitting to standing or walking and would need to lie down 5 times a day at unpredictable intervals; and (5) would be absent from work more than 3 times a month.

In May 2004, Snyder was seen by Dr. Anil Bhatia, a consulting physician for the Commissioner. Dr. Bhatia performed a physical examination, during which he took Snyder's history from her. Dr. Bhatia gave a primary diagnosis of "Hepatitis-C with fatigue and body ache" and secondary diagnoses of anxiety depression and musculoskeletal pain. Like Dr. Oliverio, Dr. Bhatia prepared a functional capacity assessment, which he stated was based on Snyder's slow movements and cautious behavior getting on the exam table. Dr. Bhatia opined that Snyder: (1) occasionally could lift 20 pounds and frequently lift 10 pounds; (2) could stand or walk for at least 2 hours in an 8-hour work day; and (3) could sit for about 6 hours.

The Commissioner denied Snyder's application. After a 2004 hearing, the

3

ALJ also denied Snyder's application. The Appeals Council then denied Snyder's request for review. Snyder appealed to the district court, which remanded the decision pursuant to 42 U.S.C. § 405(g) for further development of the record.

In turn, the Appeals Council remanded with instructions to the ALJ to, <u>inter alia</u>, further consider the opinion of Snyder's treating physician, Dr. Oliverio; further evaluate Snyder's subjective complaints and provide a rationale with regard to that evaluation; and, if warranted, obtain evidence from a vocational expert. The Appeals Council also requested that the ALJ recontact Dr. Oliverio and ask for additional evidence and further clarification of his opinion.

**B.     2007 Supplemental Hearing**

On May 1, 2007, Dr. Oliverio wrote a letter to the ALJ clarifying that he based his September 2004 functional capacity assessment on a review of his office notes, the objective medical evidence and Snyder's subjective complaints. Dr. Oliverio also reaffirmed his opinion that his assessment represented Snyder's condition prior to September 30, 2003.

The ALJ conducted a supplemental hearing, at which he heard testimony from Snyder as to the effect of her Hepatitis C symptoms of pain and fatigue on her daily life. According to Snyder, she experiences extreme tiredness and pain all over her body, but particularly in her legs, knees and feet. She has a constant low

4

grade fever that causes her to feel tired and dizzy and to sweat. She also gets nauseous and has little appetite. Snyder had lost 30 pounds since she stopped working and 15 pounds since the last hearing. At 5'8" tall, Snyder weighed only 105 pounds.

Snyder testified that she spends most of her day lying down or sleeping and that she is asleep more than she is awake. In recounting her day, Snyder said she gets up and sees her ten-year-old son off to school, goes back to bed for two or three hours and then rises to eat and sit on her porch. After about an hour, Snyder goes back to bed to sleep for two more hours before her son comes home from school. Snyder helps her son with his homework between 4:00 pm and 6:00 pm and then sleeps again until 8:30 pm, at which point she gets up again to see her son to bed. Once her son is in bed, she goes to sleep for the night.

Snyder no longer does household chores or cooks. Instead, she buys pre-made meals that her son can make in the microwave. Her son and husband clean the house. She can care for herself, but does not shower everyday and takes showers in the evening when someone else is home in case she becomes dizzy.

A vocational expert testified in response to hypothetical questions that a person with the functional limitations described by Dr. Oliverio and Snyder would not be able to perform any jobs in the economy, but that a person with the

5

limitations described by Dr. Bhatia could perform sedentary work, such as Snyder's previous job as a telemarketer. The vocational expert testified that there were no jobs available for a person who had to lie down 5 times a day, take frequent naps and miss 3 days of work a month.

After the supplemental hearing, the ALJ again denied Snyder's application. The ALJ concluded that Snyder's Hepatitis C was a severe impairment and "could reasonably be expected to produce the alleged symptoms, but that [Snyder's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[2] The ALJ gave "greater weight" to Dr. Bhatia's opinion, which the ALJ stated was "based on [Snyder's] history and objective findings." As to Dr. Oliverio's opinion, the ALJ did not state what weight he was giving. Rather, the ALJ stated: "In contrast, Dr. Oliverio indicated that his responses to the assessment form regarding [Snyder's] abilities were based on [Snyder's] subjective statements."

The ALJ concluded that Snyder could "sit for at least 6 of 8 hours in an 8-hour workday, shifting her positions to standing or walking from time to time" and could "lift and carry at least 10 pounds." The ALJ rejected Snyder's allegations of

---

[2]The ALJ also concluded that Snyder's mental impairments of depression and anxiety were not severe. Snyder does not challenge this finding on appeal. Thus, our analysis focuses only on Snyder's Hepatitis C.

disabling pain in her legs, feet and hands as "not supported by the objective medical evidence of record to the extent alleged." Based on the vocational expert's testimony that a person with the functional limitations imposed by Dr. Bhatia could perform work as a telemarketer, the ALJ concluded that Snyder had the residual functional capacity to perform her past relevant work as a telemarketer and was not disabled.

Snyder appealed to the district court, and the parties consented to proceed before a magistrate judge.[3] The magistrate judge affirmed the ALJ's decision. Snyder appealed to this Court.[4]

## II. DISCUSSION

### A. Treating Physician's Opinion

In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is amply

---

[3]Although Snyder did not file exceptions to the ALJ's decision with the Appeals Council, the Commissioner has not argued that Snyder failed to exhaust her administrative remedies and, thus, has waived this defense. See Crayton v. Callahan, 120 F.3d 1217, 1220-21 (11th Cir. 1997).

[4]We review the ALJ's decision "to determine if it is supported by substantial evidence and based on proper legal standards." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks omitted). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established . . . ." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

supported, whether an opinion is consistent with the record and a doctor's specialization. 20 C.F.R. § 404.1527(d). Generally, the opinions of examining physicians are given more weight that non-examining physicians and the opinions of treating physicians are given more weight than non-treating physicians. See id. § 404.1527(d)(1)-(2). Treating sources are given more weight because they are "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(d)(2).

Thus, a treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician,

and the failure to do so is reversible error." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to "give good reasons" for not giving weight to a treating physician's opinion). If an ALJ either "ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

## B.    ALJ's Errors in Snyder's Case

Here, the ALJ did not specify expressly the weight given to Dr. Oliverio's opinion. The most the ALJ said is that he was giving greater weight to Dr. Bhatia's opinion. If that implicitly meant that he gave less weight to Dr. Oliverio's opinion, then the ALJ failed to articulate clearly the reasons for giving less weight to his opinion. This problem alone requires reversal.[5]

In addition, the ALJ erred in stating that Dr. Bhatia's opinion was based on Snyder's "history and objective findings," while Dr. Oliverio's opinion was "based on [Snyder's] subjective statements." This statement is not supported by the record. First, according to Dr. Bhatia, the only "medical/clinical finding(s)" on which he based his opinion were Snyder's slow movements and cautious behavior

---

[5]The ALJ also failed to state what, if any weight, he gave to the findings of Dr. Anil Ram, another of Snyder's treating physicians. However, accepting Dr. Ram's findings as true has no effect on the outcome of the case because Dr. Ram only identified Snyder's condition and did not report on her symptoms or functional capacity.

9

getting on the exam table. Dr. Bhatia did not perform, or indicate that he was relying upon, any objective medical tests, such as liver function tests or other laboratory findings. Second, Dr. Oliverio indicated on his functional capacity assessment that his opinion was based on Snyder's "clinical history," which the record shows spanned several years of office visits and examinations. Furthermore, in his follow-up correspondence with the ALJ, Dr. Oliverio clarified that his functional capacity assessment was based on his "office notes, objective medical evidence, and Ms. Snyder's subjective complaints."[6] Thus, Dr. Oliverio's opinion did not rely solely on Snyder's subjective complaints, as the ALJ stated.

In summary, as to the bases for the two physicians' opinions, it does not appear from the record that Dr. Bhatia's opinion rests upon findings any more "objective" than those relied upon by Dr. Oliverio. Indeed, it appears both doctors relied upon their clinical observations, Snyder's history and Snyder's subjective reports of her symptoms. Thus, the mistake by the ALJ in this regard requires reversal.

The ALJ's ruling suffers from yet another error: The ALJ failed to give explicit and adequate reasons for discrediting Snyder's subjective complaints of

---

[6]We reject Snyder's argument that the ALJ disregarded the Appeals Council's order on remand to recontact Dr. Oliverio about her opinion on Snyder's functional capacity assessment. Based on Dr. Oliverio's May 1, 2007 follow up letter to the ALJ, it is clear the ALJ complied with the remand instructions.

pain.  According to Snyder, she suffers from pain in her arms, legs and liver and from extreme fatigue that causes her to sleep for a couple hours several times during the day.  She also testified that, between 2000 and 2003, she had difficulty sitting for more than 45 minutes, could stand for about 45 minutes, could walk about two blocks and could carry no more than 40 pounds.  However, her condition has gradually worsened in recent years and, at the time of the 2007 supplemental hearing, she had difficulty sitting less than a half an hour, could not stand for more than 15 minutes, could walk about 120 feet and could carry about 15 pounds.  She also had lost 15 pounds since the last hearing and, at 5'8" tall, weighed only 105 pounds.

In evaluating the effect of Snyder's pain on her ability to work, the ALJ properly applied the pain standard by finding that Snyder's underlying medical condition of Hepatitis C reasonably could be expected to produce the alleged symptoms.[7]  However, the ALJ failed to give explicit and adequate reasons for discrediting Snyder's testimony about the severity of her pain and fatigue.  The ALJ merely stated that Snyder's testimony as to the intensity, persistence and

---

[7]We apply a three-part "pain standard" when a claimant seeks to establish a disability based on testimony of pain and other symptoms.  Under this pain standard, the claimant must satisfy two parts of the three-part test, which includes: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

limiting effects of her symptoms was "not entirely credible" and that "[h]er allegations of disabling pains in her legs, feet, and hands are not supported by the objective medical evidence of record to the extent alleged." The ALJ did not point to any objective medical evidence contradicting Snyder's pain allegations, but appears to discredit them based on a lack of objective medical evidence. The ALJ gave no further explanation for his decision to discredit Snyder's testimony.

Such a broad credibility finding is not sufficient under our precedent. See Wilson, 284 F.3d at 1225 (explaining that an ALJ must articulate "explicit and adequate reasons" for discrediting subjective testimony and that a failure to do so "requires, as a matter of law, that the testimony be accepted as true"); Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) ("While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility and could return to her past work alone are not enough . . . ." (brackets and internal quotation marks omitted)). Furthermore, the ALJ cannot discredit Snyder's testimony as to the intensity or persistence of her pain and fatigue solely based on the lack of objective medical evidence. See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); see also Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (explaining that pain alone may be disabling and that it is improper for an ALJ to require objective medical evidence to support a claim of

12

disabling pain). Thus, the ALJ's credibility determination is not supported by substantial evidence, and Snyder's testimony of pain and fatigue must be accepted as true.[8]

## C. Disposition

In light of these errors, we must determine the nature of our remand to the ALJ. The answer to this question depends upon the stage in the five-step sequential evaluation process and the state of the record. An ALJ evaluates a disability benefits claim using a five-step sequential evaluation of: (1) whether the claimant engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals an impairment in the Listing of Impairments; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) whether, in light of the claimant's residual functional capacity, age, education and work experience, there are other jobs the claimant can perform. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Phillips, 357 F.3d at 1237.[9] If the claimant

---

[8]We reject Snyder's claim that the ALJ was required to make findings regarding the side effects of Interferon because it is undisputed that Snyder stopped taking Interferon before she applied for disability benefits. See Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).

[9]Residual functional capacity is what a claimant can do despite any physical or mental limitations caused by the impairment and its related symptoms, such as pain. 20 C.F.R. §§ 404.1545(a), 416.945(a). As to physical abilities, the residual functional capacity assesses the claimant's ability to do things like sit, stand, walk, lift, carry, push or pull. 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ's finding as to a claimant's residual functional capacity is

proves that she cannot perform her past relevant work at the fourth step, the burden

shifts to the Commissioner to show, at the fifth step, that there is other work

available in the economy that the claimant can perform. Jones v. Apfel, 190 F.3d

1224, 1228 (11th Cir. 1999).

Here, the ALJ committed multiple errors in making his residual functional

capacity finding, which informs both steps four and five of the evaluation.

Because the ALJ previously concluded that Snyder had the residual functional

capacity to perform her past relevant work as a telemarketer, the ALJ stopped at

the fourth step of the evaluation and did not address the fifth step. Thus, on

remand the ALJ must not only reconsider step four, but also complete the

sequential evaluation in step five based on the current record. In making a residual

functional capacity determination, the ALJ must accept as true both Dr. Oliverio's

opinion and Snyder's statements as to the effects of her Hepatitis C symptoms on

her physical abilities. See Wilson, 284 F.3d at 1225; MacGregor, 786 F.2d at

1053.

Further, the ALJ on remand must consider these factors in determining the

weight, if any, to give to Dr. Bhatia's opinion. First, Dr. Bhatia conducted only

_____

based on all the relevant evidence in the record, including any medical evidence, and is used in steps four and five of the sequential evaluation to determine whether the claimant can do his or her past relevant work or any other work. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(5), 416.920(a)(4), 416.945(a)(5).

14

one brief physical examination.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (providing that the opinion of a treating physician who has "seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment" generally is given more weight than an opinion of a non-treating physician).  Second, Dr. Bhatia's only stated support for his exertional limitations was his observation of Snyder's cautious and slow movements during that one examination.  See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (stating that "the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion").  Dr. Bhatia did not explain why his observation led him to conclude that Snyder could lift, stand, sit and walk as long as he did.  Although Dr. Bhatia's examination report contained some clinical findings from his physical examination, he did not offer any interpretation of that data and did not refer to it in his functional capacity assessment.  Third, in his examination report, Dr. Bhatia indicated that Snyder reported taking one to two hour naps two or three times a day and diagnosed her with "Hepatitis-C with fatigue and body ache."  Yet, Dr. Bhatia's functional capacity assessment did not address Snyder's need for rest during the workday.[10]

_____

[10]Two other consulting physicians, Dr. Alan Tetlow, an anesthesiologist, and Dr. Nicholas Bancks, a radiologist, reviewed Snyder's medical records and opined that Snyder had greater functional capacity than Dr. Oliverio assessed.  Although the ALJ did not rely on these doctors to discredit Dr. Oliverio, we note that a non-examining physician's opinion is accorded

## III.  CONCLUSION

Accordingly, the judgment of the district court is reversed and the case is remanded with instructions that the case be returned to the Commissioner for further proceedings consistent with this opinion.

**REVERSED and REMANDED**.

---

little weight if it contradicts an examining physician's opinion and cannot, standing alone, constitute substantial evidence.  See Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991); Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); see also 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  We also note that neither of these doctors is offering an opinion in his area of specialization.  See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (providing more weight be given to opinions of a specialist about medical issues related to his area of specialty).