[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11051

_____

D.C. Docket No. 8:12-cv-02271-VMC-TBM

LORI LACINA,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 1, 2015)

Before WILSON and ANDERSON, Circuit Judges, and VOORHEES,* District
Judge.

_____

*Honorable Richard L. Voorhees, United States District Judge for the Western District of North
Carolina, sitting by designation.

PER CURIAM:

Lori Lacina appeals the district court's judgment affirming the Social Security Commissioner's ("Commissioner") denial of her application for disability insurance benefits and supplemental security income.  Lacina contends that the Administrative Law Judge ("ALJ") erred by improperly weighing relevant medical opinions, resulting in an incorrect residual functional capacity ("RFC"), and erred in posing an incomplete hypothetical question to the vocational expert at the administrative hearing.

I.

Lacina applied for disability insurance benefits and supplemental security income in February 2008, claiming that she had been disabled since February 13, 2007, because of hip and leg pain, anxiety, depression, and agoraphobia.  Her applications were denied originally and on reconsideration, at which point she requested and received a hearing before an ALJ.

At the time of her hearing in April 2010, Lacina was thirty-nine years old with an eleventh grade education and past work experience as a waitress, hostess, prep cook, cashier, assistant manager, and spa busser.  Lacina testified that she has not worked since the beginning of 2007 due to pain and other difficulties arising from surgery on her right hip in 1997 (necessitated by a motor vehicle accident)

2

and a tibia fracture in 2001 (caused by "just walking").  Lacina also testified that she had been diagnosed with bipolar disorder, suffered from anxiety and depression, and had attempted suicide.  She stated that she had difficulty concentrating "all the time" and problems with her memory "most of the time."  It made her "extremely uncomfortable" to be around people because she felt like they were staring at her and she heard voices.  Driving was difficult because she suffered from panic attacks.

When questioned about her physical capabilities, Lacina stated that she could lift twenty pounds, but would have difficulty lifting a gallon of milk on a repetitive basis because of pain in her hand and elbow joints.  She also stated that she could stand for thirty minutes, at least fifteen minutes comfortably; walk comfortably for about twelve minutes; and sit for about ten to fifteen minutes before pain in her hip and lower back caused significant discomfort.

The record also contained information about Lacina's daily activities.  At all relevant times, Lacina lived with her husband and young son.  In February 2008, Lacina testified in writing that she attended school (outside of the home) for four hours per weekday.  After catching two buses home, she would rest, complete homework, clean, cook, bathe her son, watch television, and read.  At the administrative hearing, Lacina again stated that she fixed meals (with help from her husband) and did household chores, though she had to sit down and take a

3

break every twelve to fifteen minutes.  She would also lie down several times over the course of the day for a total of an hour and a half to two hours.

Following Lacina's testimony, the ALJ posed the following hypothetical to Vocational Expert ("VE") William Harvey:

> Twenty pound occasional lift, ten pounds repeatedly, a sit/stand option at will, so she can sit or stand if she needs to, can occasionally stoop, no kneeling, no squatting, no crawling.  Can occasionally climb stairs but no ropes, ladders or scaffolds.  And is limited to doing simple work which I defined as limited to four-step work and should be – only have occasional contact with the public.

The VE stated that a person with those limitations could not do any of Lacina's past work, but could perform the jobs of a small products assembler, produce inspector, or merchandise marker.   The ALJ then asked if there would be any job for a person with those limitations who also has to lie down one and a half to two hours "whenever she needs to," and the VE answered "no."[1]

Also before the ALJ were Lacina's medical records.  Because those records – particularly the psychological records – are central to the issues raised on appeal, we describe them here in some detail.

On January 8, 2008, Lacina was voluntarily admitted to Personal Enrichment through Mental Health Services ("PEMHS") due to severe anxiety and

---

[1]   On questioning by Lacina's counsel, the VE further testified that the jobs he identified would not be available if the individual was absent from work two times a month or if the individual could not do one- through four-step work.

a suicide attempt.  Dr. Hector Corzo, Lacina's examining physician, reported that Lacina was "alert and lucid," "cooperative," and with "average intellect" and "fair" insight and judgment.  Lacina admitted to Dr. Corzo that she had been hearing voices most of her life, something that she considered normal because she believed she was clairvoyant.  Dr. Corzo's diagnostic impressions were borderline personality disorder, history of generalized anxiety disorder with agoraphobia, and panic attacks.  He assigned her a Global Assessment of Functioning ("GAF") score of 35.[2]  After two days of stabilization, Lacina was discharged from PEMHS; on her discharge summary, Dr. Corzo reported a GAF score of 40.

PEMHS referred Lacina to Suncoast Center for Community Mental Health ("Suncoast") for outpatient treatment.  Lacina was evaluated by multiple mental health professionals at Suncoast.  On her January 25, 2008, appointment, she was given a GAF score of 56.  One of the Suncoast professionals, Nurse Practitioner Rebecca Shytle, saw Lacina on five separate occasions.  The first time, in May 2008, Shytle reported that Lacina was taking a combination of Vistaril, BuSpar,

---

[2]    GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social and occupational functioning."  American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 1994) (DSM-IV).  A GAF of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, familiar relations, judgment, thinking, or mood.  Id.  A score between 41 and 50 indicates serious symptoms, such as suicidal ideation, serious impairment in social, occupational or school functioning.  Id.  A score between 51 and 60 indicates moderate symptoms, such as occasional panic attacks or moderate difficulty in social, occupational or school functioning.  Id.

and Lexapro; her depression was improved but she continued to have mood swings and cried a lot; she had problems sleeping at night and therefore took naps in the afternoon; she was "alert and oriented to person, place, time and situation"; "[h]er speech [was] clear and coherent"; and her "[t]hought processes [were] relatively logical and goal-directed." Shytle assigned a GAF score of 48. In early June 2008, Shytle noted similar findings along with an "animated affect" and Lacina's self-report of one dissociative episode.[3] Shytle assigned a GAF score of 50. The last three times Shytle examined Lacina (September 2008, February 2009, and April 2009), her findings were similar and she assigned GAF scores of 53, 51 and 50. On August 5, 2009, Lacina was discharged from Suncoast because of her failure to show up for multiple appointments. Lacina's closing diagnosis was "bipolar disorder" with presentations of hallucinations, mood swings, and anxiety.

On December 3, 2008, based on a referral from the Department of Disability Services ("DDS"), Lacina saw Dr. Elizabeth Jamieson for an internal medicine examination. Dr. Jamieson reported that Lacina (who at the time complained of pain in both legs and her mid-to-lower back) could not walk on her toes or squat more than fifty percent, but had a normal gait and stance, normal range of motion in all joints except for her lumbar spine and hips, and no sensory or motor deficits

---

[3]    Specifically, Lacina reported an incident when, according to friends and family, she went into a rage. Lacina could not remember the incident.

or muscle atrophy.  Dr. Jamieson opined that Lacina had moderate to marked limitations in standing, walking, bending, and squatting, but no limitations in sitting or the use of upper extremities.  Although the purpose of the appointment was to assess Lacina's physical pain, Dr. Jamieson also noted:

> [Lacina] is a well developed, well nourished, sad-looking female who appears to be somewhat depressed . . . [Lacina] is conscious and alert, but does not have a lot of eye contact with the examiner.  She is certainly oriented in all spheres.  She shows absolutely no evidence of hallucinations or delusions or impaired judgment.  Her memory appears to be intact.  Affect is somewhat depressed.  At this time, she denies suicidal ideation.

Dr. Jamieson's final report listed the following diagnoses: chronic back pain from mid-lumbar area and radiating into both legs; anxiety and depression and agoraphobia; bipolar; borderline personality disorder; chronic pain in legs and back; left hip pain secondary to a contusion suffered in July 2008.  Lacina's prognosis was "[f]air" and it was noted that she "could possibly benefit from a psychiatric evaluation."

On April 1, 2010, Lacina presented to Dr. Karl D. Jones, a general psychiatrist, complaining of anxiety, depression, poor concentration and poor memory.  Dr. Jones reported:

> [Lacina's] appearance is casual, behavior is appropriate and somewhat isolated.  Speech is normal and slowed.  Mood is anxious, labile and depressed.  Affect is blunted.  Thought content is appropriate.  She is not psychotic, hallucinatory, or delusional. Insight and judgment is fair.  Intelligence is average.  Degree of stress is severe.  Memory; immediate, recent and remote, remains

7

intact.  Cognitive functions are within normal limits.  Proverb interpretation is impaired.  There are no suicidal or homicidal thoughts, feelings or intentions at this time.  There is a past history of suicidal attempt by overdose.  . . .  Compliance with treatment in the past has been fair.

Dr. Jones' diagnostic impressions included bipolar disorder, generalized anxiety disorder, borderline personality, and severe psychosocial stressors.  He noted that Lacina's "[c]urrent GAF is 60 and over the last year approximately the same."  He also noted that Lacina had "moderate impairment" in daily living and "marked impairment" in social functioning, concentration and adaption.  Based on his observation that Lacina's impairment levels "significantly impede useful functioning," Dr. Jones concluded that Lacina was "totally disabled."

Non-examining DDS doctors Nancy Dinwoodie, M.D., and Martha Putney, Ph.D. reviewed Lacina's disability file in March 2008 and August 2008, respectively.  Both doctors reported that Lacina had only mild limitations in functioning and thus her mental impairments were "not severe."  Thomas Renny, D.O., reviewed Lacina's file in December 2008 and reported that she retained functional capacity to perform light exertional work with occasional postural limitations and the avoidance of concentrated exposure to vibration.

By decision dated April 29, 2010, the ALJ concluded that Lacina was not disabled and denied her claim for disability insurance benefits and supplemental security income.  The Appeals Council denied Lacina's request for review, making

it the Commissioner's final decision.[4]  On January 10, 2014, the district court affirmed the Commissioner's decision.  This is Lacina's appeal.

## II.

Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied.  See 42 U.S.C. § 405(g); see also Dyer v. Barnhardt, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.") (quotation marks omitted).

It is "solely the province of the [Commissioner]" to resolve conflicts in the evidence and assess the credibility of witnesses.  Grant v. Richardson, 445 F.2d 656, 656 (5th Cir. 1971).[5]  It is the Commissioner's responsibility to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

---

[4]    See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) ("When . . . the ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision.").

[5]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

"Within this narrowly subscribed role, however, we do not act as automatons." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). "We must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Id. Substantial evidence is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks omitted).

## III.

In order to determine whether a claimant is disabled, and thus entitled to payment of disability insurance benefits and supplemental security income, the Social Security Administration applies a five-step sequential evaluation. 20 C.F.R. § 404.1520(a).

This process includes an analysis of whether the claimant: (1) is engaging in substantial gainful activity; (2) has a medically determinable impairment or combination of impairments that is "severe"; (3) has an impairment or combination of impairments that meets or equals a Listing and meets the duration requirements; (4) can perform her past relevant work, in light of RFC; and (5) can make an adjustment to other work, in light of her RFC, age, education, and work experience. Id. § 404.1520(a)(4).

In this case, the ALJ determined, at step one, that Lacina was not engaging in substantial gainful activity and, at step two, that she had medically determinable severe impairments, including "anxiety/depression disorder, alcohol abuse, [and] hip and joint pain."

At step three, the ALJ made several additional and significant findings, including that Lacina had "no restriction" in activities of daily living; and "mild difficulties" in social functioning and with respect to concentration, persistence or pace, noting that Lacina was going to school to get her GED. The ALJ also found: "No medically documented history of inability to function independently outside the area of [her] home." Based on those findings of fact, the ALJ concluded that Lacina did not have an impairment or combination of impairments that meets or equals a Listing. Lacina does not directly challenge any of the ALJ's findings or conclusions at steps one through three.

Instead, Lacina contends that the ALJ committed reversible error at steps four and five of the evaluation. Specifically, Lacina argues that the ALJ's assessment of her RFC was flawed because he improperly weighed relevant medical opinion evidence. Lacina further argues that the ALJ posed an incomplete hypothetical to the VE at her hearing.

A.    Is the ALJ's RFC flawed because the ALJ improperly weighed the medical opinions?

A claimant's RFC is used at step four of the sequential evaluation process to determine if the claimant can do past relevant work and in step five to determine if a claimant can adjust to other work.  RFC is defined as "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1).  In assessing a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence in [the claimant's] case record."  Id. at § 416.920(e).[6]  This includes a consideration of both severe impairments, and "medically determinable impairments that are not 'severe.'"  Id. at § 416.945(a)(2).  An "ALJ may reject any medical opinion if the evidence supports a contrary finding."  Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).  The ALJ is required, however, "to state with particularity the weight he gave the different medical opinions and the reasons therefor."  Id. at 279.

---

[6]    Certain principles apply to the evaluation of medical opinions.  For example, the opinion of an examining medical professional is generally entitled to greater weight than the opinion of a non-examining medical professional.  See id. at § 404.1527(c)(1).  Similarly, the opinion of a "treating" source (i.e., a medical professional who is able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)") is usually entitled to greater weight than the opinion of a medical professional who sees the claimant only once or for a brief period of time.  Id. at § 404.1527(c)(2).  An ALJ will also consider: the length, frequency, and nature of the provider-patient relationship, the extent to which a provider or other source presents relevant medical evidence to support his opinion, and the consistency of an opinion with the record as a whole.  See generally § 404.1527(c).

12

Lacina asserts that the ALJ, in assessing her RFC, committed reversible error when he allegedly did not state the weight he was giving to Dr. Corzo's assessment of GAF scores, and gave too little weight to Dr. Jones' opinion.

Dr. Corzo is the psychiatrist who examined Lacina at PEMHS in January 2008. The ALJ accurately recounted Lacina's medical records from that two-day hospitalization, including Dr. Corzo's notes and diagnostic impressions. The ALJ also stated that Dr. Corzo's notes "fully support[ed]" the ALJ's findings with respect to Lacina's RFC. The ALJ did not, however, mention or assign weight to the two GAF scores (35 and 40) that Dr. Corzo assigned to Lacina – scores that can reflect "major" mental impairments.[7]

Lacina urges us to find that the failure to specifically account for those GAF scores is reversible error. We conclude that, at most, it is harmless error. At the outset, it is important to note that the Commissioner has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." See 65 Fed.Reg. 50746, 50764-65. More importantly, however, the record reflects that the ALJ considered the evidence relevant to Lacina's mental impairments and that his conclusions were supported by substantial evidence. The GAF scores in question were assigned over a two-day period of hospitalization in

---

[7]     See American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 1994) (DSM-IV).

January 2008, brought on in part by Lacina's not taking her prescribed medications, medications that Lacina testified are helpful when she takes them. Lacina was stabilized during the hospitalization, and returned to appropriate medications. Very shortly after her discharge from the hospital, on January 25, 2008, Lacina was seen at Suncoast for out-patient medical health treatment, and was given a GAF score of 56. In subsequent evaluations, Lacina's GAF scores improved steadily into the 50's for most of the balance of 2008 and reaching approximately 60 for the year preceding April 2010. A score of 60 reflects mild to moderate symptoms in social, occupational and school functioning, and is not inconsistent with the ALJ's conclusion that Lacina's mental impairments "do not preclude [her] from adjusting to a very simple work setting," especially where "treatment records have consistently documented that [she] was alert, cooperative and oriented in person, place, time and situation."

Lacina next argues that the ALJ gave too little weight to Dr. Jones' opinion. Dr. Jones is the psychiatrist who examined Lacina on April 1, 2010, immediately before the hearing before the ALJ on April 6, 2010. Dr. Jones' diagnostic impressions included bipolar disorder, generalized anxiety disorder, borderline personality, and severe psychosocial stressors. He also noted that Lacina had "moderate impairment" in daily living and "marked impairment" in social

14

functioning, concentration, and adaption.  He concluded that she was "totally disabled."

The ALJ afforded "little weight" to Dr. Jones' opinion.  After correctly noting that "the issue of disability is one reserved to the Commissioner" see 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1), the ALJ explained that the remainder of Dr. Jones' opinion was discredited because he examined Lacina only once, and, more importantly, because his opinion was inconsistent with other substantial evidence.  The other substantial evidence to which the ALJ referred included Lacina's own testimony with respect to her activities as well as very substantial other medical evidence which was inconsistent with Dr. Jones' opinion.  Moreover, the ALJ noted that Dr. Jones "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant,"[8] and the ALJ expressly referenced his earlier credibility finding, saying:  "Yet, as explained elsewhere in this decision, there exist[sic] good reason for questioning the reliability of the claimant's subjective complaints."

On February 18, 2008 – just over a month after Dr. Corzo discharged Lacina – she applied for benefits and described her daily activities as going to school each

---

[8]    Dr. Jones' report bears out the ALJ's observation that he relied heavily upon Lacina's oral representations and complaints.  His report was replete with observations that "she said . . .."  Moreover, the only obviously objective aspect of Dr. Jones' report was its statement that "[o]n the social and occupational functioning assessment scale, she scores in the area of 60," which he also indicated had been the approximate GAF score for the last year.

day for four hours, catching two buses home, and after a rest, doing homework, housework, bathing her four-year old, and cooking. At a September 2008 appointment with Nurse Shytle at Suncoast, Lacina indicated that she was then going to school part-time and was planning to go fulltime beginning in October. The fact of such activity strongly supports the ALJ's discount of Dr. Jones' opinion that Lacina was totally disabled, and his opinion that she suffered marked impairment in social functioning, concentration and adaption.

The other significant reason given by the ALJ for discounting Dr. Jones' opinion – that his opinion was inconsistent with the other medical evidence – is amply supported by the record. As the ALJ noted, "the treatment records from Suncoast consistently documented that the claimant was oriented to person, place, time and situation, affect animated, speech was clear and coherent, her thought processes were logical and goal-directed, and her insight and judgment were fair." The ALJ's description of the Suncoast medical records is accurate. We conclude that the record amply supports the ALJ's discounting of Dr. Jones' opinion.[9]

---

[9] Lacina's brief makes a conclusory assertion that the ALJ also failed to address the weight to be given to the opinions of Nurse Shytle; Lacina's bald assertion is insufficient to preserve the issue. Moreover, as indicated above, the ALJ provided ample discussion of Lacina's treatment at Suncoast, and by Nurse Shytle, and the ALJ properly concluded that the medical records from that treatment "fully supported" the ALJ's findings with respect to the extent of Lacina's limitations and his determination with respect to her RFC.

For the foregoing reasons, we reject Lacina's challenge to the ALJ's assessment of the medical opinions, and we conclude that the ALJ's interpretation of the medical evidence is amply supported by the record. We also conclude that the medical evidence and the evidence with respect to Lacina's daily activities amply supports the ALJ's finding that Lacina suffers only from "mild difficulties" with respect to social functioning and concentration, persistence, or pace. Accordingly, the ALJ's findings with respect to Lacina's RFC are supported by the record.

B. Claimant's Challenge to the Hypothetical Posed by the Vocational Expert

Lacina's primary challenge to the sufficiency of the hypothetical posed to the Vocational Expert is the failure to include any impairment attributable to agoraphobia,[10] which was mentioned by Dr. Jamieson and Dr. Corzo. We reject Lacina's challenge. The ALJ found: "[T]here is no medically documented history of inability to function independently outside the area of one's home." And the ALJ found that Lacina suffers only "mild difficulties" with respect to social

---

[10]     The Mayo Clinic staff defines agoraphobia as "a type of anxiety disorder in which you fear and often avoid places or situations that might cause you to panic and make you feel trapped, helpless or embarrassed. With agoraphobia, you fear an actual or anticipated situation, such as using public transportation." Mayo Clinic Staff, Agoraphobia, Mayo Clinic, (Mar. 26, 2015, 5:45 PM), http://www.mayoclinic.org/diseases-conditions/agoraphobia/basics/definition/con-20029996

functioning and concentration, persistence, or pace.  The ALJ's findings have substantial support in the record evidence.  Neither Dr. Jamieson nor Dr. Corzo indicated the severity of Lacina's agoraphobia, and neither doctor indicated any limitation on Lacina's functioning attributable to agoraphobia.  Lacina's daily school attendance and capacity to take public transportation demonstrated that any impairment attributable to agoraphobia is minimal, or at least mild.  Moreover, the hypothetical to the Vocational Expert – and the ALJ's RFC – limited the available jobs to those involving simple work limited to four-step work, and also limited to those jobs with "only occasional contact with the public."  Thus, both the hypothetical to the Vocational Expert and the ALJ's formulation of Lacina's residual functional capacity reflected the ALJ's assessment of the medical evidence and his finding that Lacina suffers only from "mild difficulties" with respect to social functioning and concentration, persistence, and pace.[11]

## IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.[12]

---

[11]    Immediately preceding the ALJ's formulation of Lacina's RFC, the ALJ expressly noted: "Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."

[12]    Any other arguments asserted on appeal by Lacina are rejected without need for further discussion.